The North-western Mutual Life Insurance Company, Respondent, v. Francis B. Mooney et al., Appellants.

Plaintiff employed defendant M. as its general agent within a specified territory, he to receive certain commissions, which the contract prescribed should "in no case be allowed upon any part of a premium before the same is collected and paid over to said company." It was also agreed that for the first six months of the contract plaintiff should "advance to M. $200 per month" to be "expended in advancing the interests of the company in the territory" named, the same "to remain a first lien upon all the business and renewal interest secured" to M. under the contract "until repaid with interest." Upon discontinuance of the contract in any way, it was stipulated that all interest in commissions should "revert back to the company." Plaintiff made the advances called for, and the contract having been discontinued, brought this action upon a bond given by M. at the time of his appointment, for the faithful performance of the contract and for the payment over of all moneys belonging to plaintiff, to recover back, among other things, the moneys so advanced. *Held*, that the word "advance" did not necessarily imply a loan; and that in the absence of any express agreement in the contract on the part of M. to pay back the moneys, or of words showing he assumed a personal liability therefor, the sum advanced him could not be considered as a loan, but simply as so much of the funds of the principal placed in

the hands of the agent to be used in its business and for which the agent could be required to account; that the fact the sum advanced was to be a first lien on M.'s interest under the contract " until repaid with interest," did not imply a personal liability.

The contract contained a provision to the effect that M. should be paid fifteen per cent additional premium " on all new policies placed and reported by himself or his agents " in his territory; that territory was, at the time the contract was made, occupied by sub-agents, and M. was required by his agreement " to carry out in good faith all contracts then in force with them." *Held,* that the effect of agreement was to make the sub-agents his agents thereafter; and that he was entitled to the extra commissions on new business placed and reported by them prior to the discontinuance of the contract.

(Argued December 13, 1887; decided January 17, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made October 7, 1884, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought upon a bond executed by defendant Mooney as principal and the other defendants as sureties.

The plaintiff by written contract undertook to employ one Mooney as its agent for the term of five years, to solicit applications and collect premiums for insurance within certain territory in the state of New York, and defined his duties in regard thereto, and his commissions. It was agreed therein, among other things, that funds belonging to the company should be . remitted at stated periods and that " commission will in no case be allowed upon any part of a premium before the same is collected and paid over to the said company." It was also agreed that " for the purpose of successfully developing and establishing the agency of the company in the territory herein named, an additional commission of fifteen (15) per cent shall be allowed Mooney on premiums of all new policies placed and reported by himself or his agents in the said field during the first year of this contract, " with certain exceptions not material here, and that for the first six months of this contract the company will advance to the said Mooney the sum of two hundred ($200) dollars per month, which amount is to

be expended in advancing the interests of the company in the territory herein named, and is to remain a first lien upon all the business and renewal interest secured to the said Mooney under this contract, until repaid with interest at seven (7) per cent per annum. It is further provided that said advance may be discontinued by the company on giving sixty (60) days notice to said Mooney of a desire to do so."

On his part Mooney promised to "devote his entire time, energy and ability to soliciting applications, collecting premiums and otherwise promoting the interest of the said company. He will comply with the rules and instructions of said company, and make reports of each month's business to the said company on or before the tenth day of the month next succeeding, inclosing cash enough to balance such report; and as soon as practicable will, at the expense of said agent, employ a sufficient number of sub-agents under said agent, to thoroughly canvass the entire field embraced in this contract; and in consideration of this contract and of the commission to which the said agent is entitled thereby in the work of said sub-agents, will be responsible to the said company for all business done by or intrusted to the sub-agents under said agent." And it was mutually agreed " that upon the discontinuance of this contract in any way all interest of said agent in this contract in commission on premiums," with certain exceptions, "revert back to the company."

At the same time Mooney, with sureties, gave the bond in suit to the company in the penal sum of $5,000, conditioned that he "shall faithfully discharge the duties as agent of said company, so long as he shall continue to act as such agent, whether acting under a contract, express, implied or otherwise; and shall pay over all moneys belonging to the said company at such times, and in such manner, as the rules of the company and its officers prescribe."

Some other facts are stated in the opinion.

*Richard W. McIncrow* for appellants. No duty or equity exists to repay moneys expended in advancing the interests of

the company. The contract contains no express acknowledgment of indebtedness therefor, no express covenant to repay the money. (*Culver* v. *Sisson*, 3 N. Y. 265, 266; *Weed* v. *Covell*, 14 Barb. 242, 243; *Salisbury* v. *Philips*, 10 Johns. 57; *Briscoe* v. *King*, Cro. Jac. 281.) In interpreting the meaning of this contract all the surrounding circumstances and the relations of the parties as they existed at the time of of its execution and delivery ought to be considered. (*Western N. Y. L. Ins. Co.* v. *Clinton*, 66 N. Y. R. 331; *Matter of N. Y. C. R. R. Co.* 49 id. 419.) A lien is the right to hold possession of another's property for the satisfaction of some charge attached to it. (3 Parson's on Contracts, chap. 9, 234; *Salisbury* v. *Philips*, 10 Johns. 57; *Weed* v. *Covell*, 14 Barb. 242; *Culver* v. *Sisson*, 3 N. Y. 265.) The liability of sureties is always *strictissimi juris* and shall not be extended by construction. (*McCluskey* v. *Cromwell*, 11 N. Y. 598; *Nat. M. B. A.* v. *Conkling*, 90 id. 116.) Their liability will not be extended beyond the plain and explicit language of their contract. (*People* v. *Lee*, 104 N. Y. 449; *People* v. *Chalmers*, 60 id. 154; *Hays* v. *Ward*, 4 Johns. Ch. 123.) The lien, if there was a personal liability for the advances, would be the primary fund for their payment, which plaintiff must exhaust before resorting to the bond to recover from the sureties. (*Brewer* v. *Staples*, 3 Sand. Ch. 579.) The sureties would be entitled to be subrogated to the rights of the plaintiff under the lien. (3 Johns. Ch. 117.) This action cannot be sustained for money had and received. (*Longchamp* v. *Kenney*, 1 Doug. 138; 13 Mass. 216; 4 Greenl. 382; 1 N. H. 17.)

*A. M. Beardsley* for respondent. The objection that the defendant Doyle could not be held liable, for the reason that his name does not appear in the body of the bond is not tenable. (21 Alb. Law Jour. 69, 70; *Decker* v. *Judson*, 16 N. Y. 447; *Ex parte Fulton*, 7 Cow. 483; *Clarke* v. *Rawson*, 2 Denio, 135; *Parks* v. *Brinkerhoff*, 2 Hill, 663.) The plaintiff was

entitled to recover of the defendants the $1,200 advanced to Mooney with interest thereon. (*Booth* v. *Cleveland*, 79 N. Y. 21; *Chase* v. *Ewing*, 51 Barb. 612.) The fact that Mooney took and kept his commissions and the company allowed him so to do, as shown by the reports, is the best evidence that Mooney and the company could keep such commissions to repay the advances until after Mooney had himself failed to pay the advances. (*Brown* v. *Brown*, 34 Barb. 533; *People ex rel* v. *Dayton*, 55 N. Y. 367; *Reading* v. *Gray*, 37 N. Y. Sup. Ct. 79, 90; *Stokes* v. *Recknagel*, 38 id. 368, 384.) Mooney received the moneys as advances, knowing them to be advances and agreeing they were to be repaid and giving a lien for them, must have known he was incurring a debt. He is, therefore, bound to repay it and on his failure to do so his bondsmen become liable. (*Kimball* v. *Huntington*, 10 Wend. 675, 679.) Every loan creates a debt from the borrower whether there be a bond or covenant for payment or not. (*Howell* v. *Price*, 1 P. Wms. 294, *note* 1.) The contract is to be construed so as to give effect to all its parts, and is to be construed as a whole and liberally. (Broom's Leg. Max., ch. 6, 237.) They therefore admit it, and are concluded by this admission. (*Steam Nav. Co.* v. *Weed*, 17 Barb. 378.)

DANFORTH, J. The appellants were sureties to the plaintiff for one Mooney, its agent, and the conditions on which their obligation depended were, 1st, that Mooney should perform his contract with the plaintiff; 2d, that he should faithfully discharge his duties as agent; and 3d, that he should pay over all moneys belonging to it in such manner as should be prescribed. The complaint contains three causes of action. The second was found by the referee to be groundless, but the first and third he reported to be proven. Concerning the first cause of action the complaint, after setting out the engagement of Mooney as agent and his agreement as to procuring and effecting insurance upon lives by policies to be issued by the plaintiff, and making collections for premiums and remitting the same to it, alleges that it was further agreed that the plaintiff

should advance " to the said Mooney the sum of $1,200, which was to remain a first lien upon all the business and renewal interest secured to said Mooney under the contract, until repaid by said Mooney, with interest at seven per cent; that said Mooney agreed by said contract to pay said money, with seven per cent interest;" that the plaintiff did accordingly advance to him moneys at various times, amounting to $1,200, which he has not paid.

The referee finds, as facts, that the moneys were advanced; that the agreement between Mooney and the plaintiff "provided for the repayment to the plaintiff by the said Mooney of the moneys so advanced to him as above stated with interest thereon at the rate of seven per cent; and the said bond so made, executed and delivered by the defendants to the plaintiff, provided for the performance by the said defendant Mooney of the said contract," and as conclusion of law he finds, that the defendants are indebted to the plaintiff, and the plaintiff is entitled to recover from the defendants in this action the sum of $1,480, for and on account of the $1,200 so advanced to the defendant Mooney, with the interest thereon.

It is apparent from the record that the plaintiff's contention before the referee in furtherance of the allegation in the complaint, treated the advance as a loan and charged Mooney as a borrower. The complaint alleges that " Mooney agreed by the contract to pay the said money with seven per cent interest." The referee says: "The plaintiff's contention in this action is, that the clause relating to advances of money in the contract named provides for a loan to Mooney to be repaid by him absolutely and unconditionally," and in his opinion and finding adopts the plaintiff's view of the contract. The validity of the judgment depends upon the correctness of that construction, and with it I cannot concur. In the first place there is no express agreement on the part of Mooney to pay back the money; there is no agreement that its advance shall create an indebtedness on his part; no word signifying that he is to be a borrower, nor that the plaintiff will lend to him any money. These omissions in an agreement so fully and minutely defin-

ing the duties and contract obligations of the agent, and the contract rights of the company, are of great significance. It would have been much more natural to insert words signifying that to be the true character of the transaction, if it was so intended, than omit them, and much easier to say directly that Mooney assumed a personal liability, if that were the fact, than to use words which require an extended argument on the part of counsel to satisfy a referee or court that such liability, although not expressed, may be inferred. It would have been a simple matter to have said that Mooney would repay the money, if that was the agreement, and that such or similar words were not used is one proof, among others, that the parties never intended to enter into such an agreement as has with difficulty been spelt out for them. It certainly was not omitted from an unconsciousness of the value and importance of definite and accurate statement of the terms upon which the relations of principal and agent were to be formed. Of all the many topics covered by the contract this, the simplest, is alone left in doubt. The rest are treated with professional art and prudence. But in respect to this matter what are the words used? It is agreed that for six months the company "will advance to the said Mooney the sum of $200 per month." To advance is to bring forward. Standing by itself it means nothing more than that the company will "forward" to Mooney this money; they will take it from their treasury and put it in his hands. For what purpose must be elsewhere ascertained. It may characterize a gift; it may be in anticipation of a debt to mature at a future time; it may characterize an act by which a consignee is put in funds for the management of the business of the consignor, or any transaction by which an agent, through the use of money, is desired to promote the business of the employer. In other words the use to which it is to be put will determine the nature and qualify the character of the advance. If to the use of the advancee it may be regarded as a gift or a loan according to circumstances, but if the advance is to be used in the business of the person making it, it could be regarded neither as a gift nor a loan. The person to whom

it was advanced could neither hold it as his own, nor could he be charged as a borrower. He could be called to account for it and made to show in what way he had complied with the directions under which he received it. · Just so it is in this case. The parties leave no room for doubt on this subject. They say this sum of $200 per month advanced to the agent, is to be used in advancing the interests of the company in the territory " covered by the contract." Thus the principal is to " advance," *i. e.*, put forward to the agent, money, and in its turn the money is to be used in " advancing," that is, " putting forward " the interests of the company. The first advance is not more a loan to the agent than the last advance is a loan by the agent to the company. He is responsible to them for its use and may be called on to account for, or show that it has been used for the purpose for which he received it. And for his failure to account the sureties would be bound by the express terms of the bond. They undertake that he shall " discharge his duties as agent," and they undertake that he " shall pay over all moneys belonging to the company." Money loaned ceases to be the money of the lender and becomes the property of the borrower. If the money in question was loaned, it was not in his hands as money belonging to the company.

But the contract goes further. It is added that the amount. advanced " is to remain a first lien upon all the business and renewal interest secured to the said Mooney under the contract, until repaid, with interest at seven per cent." These circumstances are not inconsistent with the view already expressed, nor are they inconsistent or in contradiction of the meaning attributed to the promise of the company to make the " advance." They constitute an agreement that the advance made shall be a lien on the interest of the agent under the contract, but that involves no personal liability. It is an advance of money upon personal security, but not upon personal credit. A chattel mortgage, declared by its terms to be void, if the mortgagor paid a sum named by the first of January ( *Weed* v. *Covill*, 14 Barb. 242), or " if he shall pay " (*Salisbury* v. *Philips*, 10 John. 57), or for the purpose of

securing the payment of $345.70 (*Culver* v. *Sisson*, 3 N. Y. 264), permitted no implication of an agreement to pay or an acknowledgment of indebtedness. Nor in this case can the fact that the duration of the lien is provided for until the amount "is repaid," allow a different conclusion. It is clear that it does not imply an agreement on Mooney's part to be personally bound for its repayment. (*Salisbury* v. *Phillips*, *supra*.) He received the money with authority to apply it to certain purposes, and if not so applied it might be recovered back as money received to the use of his principal. He never held it for any other use than that of the agency, and there can be no liability except under the express terms of the agreement. These have not been violated. This conclusion accords with the issue made by the pleadings. The complaint alleges that Mooney agreed by the contract to pay the money. The answer denies it. It was not necessary to do more. A pawn broker might as well sue for money advanced upon a pledge, a banker for money advanced upon collaterals, a master for money furnished his servant to procure supplies. In neither case without a promise or circumstance from which a promise may be implied is a debt created, nor could either recover as upon a debt for money received or advanced. The particular contract must govern the rights of the parties.

It follows that the referee erred in allowing a recovery for the money advanced in this case. Neither the allegations nor the proof made out a cause of action for any breach of the undertaking by which the appellants bound themselves. The referee also allowed the plaintiff $158.50 as for moneys collected and not paid over. This sum was arrived at by disallowing the defendant's claim for commissions at fifteen per cent on new policies issued from August 1, 1878, to May 1, 1879. The territory assigned by the plaintiff to Mooney was at the time occupied by sub-agents theretofore appointed by the plaintiff, and the defendant Mooney was required by his agreement "to carry out in good faith all contracts then in force with them." The effect of this provision was to put him in the place of the company, so far as the terms were

concerned on which those agents were employed and they became his agents for the future. But the same clause of the agreement which affects this relation declares : " For the purpose of successfully developing and establishing the agency of the company in the territory herein named, an additional commission of fifteen (15) per cent shall be allowed the said agent on the premiums of all new policies placed and reported by himself or his agents in the said field during the first year of this contract."

It appears by the finding of the referee " that the amount of premiums paid to said plaintiffs by such sub-agents referred to in said contract, for insurance within the limits of such agency on applications procured by such sub-agents between August 1, 1878, and May 1, 1879, was $1,554.64," and that this sum of $1,554.64 " was premiums on new policies placed and reported in said agency by agents in existence at time of contract during said first year of said contract."

The contract between the parties was, however, put an end to by Mooney on the fifteenth of April, and at that time he ceased to have any interest in the business of the company and could claim nothing on account of policies thereafter issued. Whether there were any issued after that date or not, and if so, how many, does not appear. The referee disallowed the entire claim and found a balance due the plaintiff. In this also, we think, he erred.

For the several errors pointed out the judgment should be reversed, the order of reference vacated, and a new trial had, with costs to abide the event.

All concur, except EARL and PECKHAM, JJ., not voting.

Judgment reversed.