In the Matter of the Estate of SAMUEL SCHEM, Deceased.

Surrogate's Court, Bronx County, December 30, 1935.

*Charles W. Rosenberg* for the petitioner, Julius Schem, as administrator, etc.

*Weiss, Pels & Grant,* for the respondent.

HENDERSON, S. In this discovery proceeding the respondent admits possession of the two certificates of corporate stock and the decedent's ownership thereof, but alleges in his answer that the decedent delivered them to him " as security for monies loaned by respondent to decedent representing drawings advanced to decedent in excess of his earnings while employed by respondent, and which decedent agreed to repay." He also alleges " that during the years 1929, 1930, 1931, 1932, 1933 and 1934 decedent's overdrawings amounted to $994.76 which sum is now due and owing respondent and no part of which has been paid, although duly demanded," and that he is entitled to retain such certificates until the payment of that amount.

The respondent conducts a jewelry and novelties business and the decedent was continuously in his employ as a salesman for at least fourteen years immediately prior to his death. Their relationship was friendly.

The certificates were issued to the decedent in his name and are not indorsed in any manner. They are respectively dated July 8, 1929, and October 19, 1932.

The respondent testified on direct examination that he had continuous possession of them since March, 1932. The respondent's sister and bookkeeper, who had charge of the office for fourteen or fifteen years, testified that they were kept in a drawer in the safe of the respondent who had the only key to the drawer; that the decedent knew the combination of the safe, had access thereto and the stock of jewelry kept therein, and that he did not have a key to such drawer. She was not present when the certificates were put in the safe and does not know who put them there. Her testimony that she was present when the decedent and the respondent talked about the certificates, but did not remember what decedent said with reference to the purpose of the respondent's possession of them, was later corrected when she testified that she was never present when the matter of the certificates came up between them.

She testified that the terms of the decedent's employment by the respondent provided that he receive a salary and commissions to the end of the year 1923, and that she knew it was renewed verbally from year to year. The decedent received a salary of fifteen dollars a week and his commissions were not charged against his salary. He drew an additional sum of five dollars each week which was charged against his commissions. His salary was stopped for one or possibly two years before his death, but the witness did not know whether it was one or two years, although she knew it had stopped. He also drew advances for traveling expenses from time to time. The witness prepared a statement at the end of each year on the basis of the first agreement, which she would take up with the decedent who then signed it. There were no overdrafts prior to 1929. The decedent's salary was never included in the statements and was never deducted from his commissions. The statements included the total sales less his credits, the commissions earned, his traveling expenses, his purchases of jewelry at cost, and deductions for traveling expenses and other moneys advanced him. The witness did not know whether the purchases taken by decedent at cost were gifts to the trade or personal. She said that not all the watches charged against the decedent were given to customers, but did not itemize any one or more that were not given to the respondent's customers. All the traveling expenses were made in the course of the decedent's business as salesman for the respondent. There was an overdraft each year after 1928, and each year the decedent told the witness he would take up the matter with the respondent. At the end of the first or second year of the over-

drafts, he told her he would probably pay back and that his commissions would be good for the following year. He did not pay back any overdraft. From the statements in evidence it appears that no " overdraft " of any previous year was included in any of them. Under date of December 31, 1923, the respondent and the decedent executed the following writing:

" Mr Samuel Schem is employed by Wolff Bros. from Jan. 3d, 1924, upon a compensation of ($15.00) Fifteen Dollars per week and a commission of 5% in addition on La Garde Bags and 10% Commission on other goods sold by him and shipped by Wolff Bros.                                        " S. SCHEM
                                                          " M. WOLFF "

No other written agreement is in evidence. In the absence of any agreement to the contrary, an employer's advances to a salesman are absolute and when his commissions, as earned, do not entitle him to the full sum advanced, there may be no recovery by the employer of the difference. (*Northwestern Mut. L. Ins. Co.* v. *Mooney,* 108 N. Y. 118, 123, 126; *Carter* v. *Bradlee,* 245 App. Div. 49, 52; *Pease Piano Co.* v. *Taylor,* 197 id. 468; affd., 232 N. Y. 504; *Educational Films Corp.* v. *Internat. Film Serv. Co.,* 129 Misc. 370; affd., 222 App. Div. 668; *Hollender* v. *Friedenberg,* 60 Misc. 566; *Schlesinger* v. *Burland,* 42 id. 206; *Kane* v. *Auto Laks Mfg. Co.,* 172 N. Y. Supp. 275; *Wing Mfg. Co.,* v. *Thompson,* 120 id. 51.)

There is no evidence of any valid agreement by the decedent to pay any overdraft. There is no evidence that any part of the overdrafts were used for any purpose other than in the respondent's affairs except the testimony of the respondent's sister that not all the watches charged against the decedent were given to the respondent's customers. She did not testify, however, as to which one or ones were personal purchases by the respondent and I do not believe she has any real knowledge thereof.

From the evidence I cannot find any indebtedness of the decedent to the respondent. Hence there was no reason for any collateral security. The respondent has not established that he holds the certificates for the purpose he alleges. It is just as probable, if not more so under the established circumstances, that they were placed in the safe drawer for safekeeping. I find that they are the absolute property of the decedent's estate. The respondent is directed to deliver them to the petitioner.

Settle decree.