## SOCONY–VACUUM OIL CO., Inc., v. C. M. JOHNSTON & SONS SAND & GRAVEL CO.

### No. 11361.

Circuit Court of Appeals, Eighth Circuit.

April 20, 1939.

James P. Kem, of Kansas City, Mo. (J. R. Kaspar, of Kansas City, Mo., and J. M. Nugent, of New York City, on the brief), for appellant.

Tyree G. Newbill, of Kansas City, Mo., (W. Arnold Brannock, Jr., of Kansas City, Mo., and Austin M. Coates, of Helena, Ark., on the brief), for appellee.

Before SANBORN, THOMAS, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

This case arises out of an attachment by garnishment under which judgment was entered against the garnishee, appellant herein, in the sum of $1,385.10. For convenience we shall adopt the names of the parties as referred to in the brief of appellant, to-wit: The appellant garnishee as "Socony", the appellee-creditor as "Johnston", and the judgment debtors as "Elliotts".

At the time of the service of the summons in garnishment the Elliotts were contractors engaged in the construction for Socony of a tow-boat and four oil barges for river service, to be delivered to Socony's Kansas City plant. The construction was made under the provisions of two contracts, known as the "barge" contract and the "tow-boat" contract. It is conceded that this controversy arises under, and may be confined to a consideration of, the provisions of the barge contract. The paragraphs of that contract, which condition the questions here presented for determination, are, more specifically, the following:

"6. The Owner agrees, that the Contractors may draw on the Owner up to the sum of Two Hundred Fifty Dollars ($250.00) each per month during the construction of the four barges but such right shall not extend beyond the agreed delivery date of the last barge, and shall be an advance payment against any moneys ultimately found to be due and payable to the Contractors.

"19. In the event that the barges are not completed and delivered to the Owner before the specified delivery date for each barge, or the extended delivery date, as provided for in Paragraph 18 hereof, the Contractors shall pay to the Owner at the rate of Fifteen Dollars ($15.00) per barge per calendar day for each day each of the barges is delivered later than the specified delivery date or extended delivery date, as provided for herein, said payment to be considered as liquidated and agreed upon damages and not by way of penalty.

"21. In consideration of the Contractors performing all of the conditions on their part to be performed, the Owner agrees that, if the total cost of construction of the four (4) barges including advances made for the Contractors account does not equal or exceed the gross sum of One Hundred Ten Thousand Three Hundred Thirty Five Dollars ($110,335.00), to pay to the Contractors a sum of money equal to the difference between the cost of construction as shown by the account of the Owner and the minimum cost of One Hundred Ten Thousand Three Hundred Thirty Five Dollars ($110,335.00) less any damages provided for in paragraph 19, and transfer to the Contractor any right, title or interest of the Owner in and to any materials, tools or equipment purchased by the Owner at the request of the Contractors and not incorporated in the finished barges delivered to the Owner.

"22. The Contractors agree that, should the total cost of construction of the four (4) barges including advances made for the Contractors account exceed the sum of One Hundred Ten Thousand Three Hundred Thirty Five Dollars ($110,335.00), no further payments shall be due to Contractors and that the Contractors shall pay the Owner for such materials, tools, and equipment purchased at their request and not incorporated in the finished barges, due al-

lowance to be made for the reasonable rental value and depreciation on such materials, tools and equipment in establishing the final cost of the barges; and pay the Owner for damages, if any, provided for in Paragraph 19 hereof."

The contract was entered into and dated March 11, 1937. This action was commenced in the Circuit Court of Jackson County, Missouri, May 7, 1937, and the summons of garnishment was served upon Socony on May 8th. The case was removed to the United States District Court for the Western District of Missouri because of diversity of citizenship. June 7, 1937, Socony paid to the Elliotts the sum of $500; a like payment was made July 2, 1937, and $387.10, August 4, 1937. Socony's answers to plaintiffs' interrogatories were filed January 7, 1938. The substance of the answers was that, in the payments made, under the terms of Paragraph 6 of the contract, Socony granted certain loans or advances to the Elliotts to be repaid out of the amount, if any, that might accrue to the defendants upon completion of the construction contracts; that the "total actual cost of the construction of said four barges exceeds the minimum base cost provided for in the contract, and, therefore, there is nothing due under said barge contract to Samuel J. Elliott and Kenneth R. Elliott". The plaintiff Johnston denied the garnishee's answer, alleging, among other things, that Socony was obligated by the contract to pay to the Elliotts the so-called advances, and that, by reason thereof, the garnishee was liable to the judgment creditor for such amounts paid to defendants after being summoned as garnishee. It is conceded that the sum of $1,387.10 was paid after service of that summons.

█ It is true, as claimed by appellant, that the law to be applied to the factual situation presented is that of the State of Missouri as found in its statutes and the decisions of its courts. Counsel for the garnishee rely mainly upon the holdings that, in Missouri, advance payments, made in the absence of fraud or bad faith, are not subject to garnishment. Counsel cite a number of Missouri decisions, which establish this general rule, subject, however, to well defined exceptions. Ordinarily, payments in advance of salary or wages are exempt from garnishment, unless pursuant to an agreement made for the purpose of hindering the employee's creditors, in which case they are void in law. Of course the ap-plication of the rule is not strictly confined to wage and salary cases; but payments in advance for services, unearned but to be rendered pursuant to contract, are generally involved. To warrant impounding by garnishment the indebtedness must be absolutely due as a money demand and not merely contingent. Holker v. Hennessey, 143 Mo. 80, 44 S.W. 794, 65 Am.St.Rep. 642. To recover, the plaintiff in garnishment must show facts entitling the defendant to recover against the garnishee. South Central Securities Co. v. Vernon et al., 227 Mo.App. 486, 54 S.W.2d 416; Firebaugh et al. v. Stone, 36 Mo. 111.

It thus becomes important to examine the context of the contract with the aid of surrounding circumstances to determine the exact meaning of the term "advance payment" as used in Paragraph 6. The Elliotts, judgment debtors, are not employees of Socony. They are independent contractors. The contract was executed, and so-called advance payments were made thereunder, prior to the institution of these proceedings in garnishment; and there is no charge of fraud or bad faith in the making of the barge contract. It seems to us that the decision in this case must depend upon construction of the contract under which the payments in controversy were made between the service of the summons in garnishment and the filing of answer thereto. No Missouri decision exactly in point as to the relationship existing between Socony and Johnston has been brought to our attention. Commission contracts, and those providing salary, with additional remuneration if profits exceed a specific sum, more nearly express that relationship in the case before us.

█ In the last analysis it would appear that the crucial test is whether the payment made is one which, under the contract as a whole, the payee is entitled to as of right, and, in general, one which he may enforce, even by suit, if necessary. While, as stated, cases embodying the precise question have apparently not been decided by the Missouri courts, the principle involved has received consideration in other jurisdictions.

"Contracts of employment providing for payments from time to time of fixed sums on account of, or as advances against, commissions to be earned, in absence of express agreement to contrary, impose no liability to repay if commissions do not equal payments, which are 'advances' only

278

in sense they are to be deducted from commissions earned". Kane v. Auto Laks Mfg. Co., Supreme Court New York, 172 N.Y.S. 275; Schlesinger v. Burland et al., 42 Misc. 206, 85 N.Y.S. 350; Schnabel v. American Educational Alliance, 79 Misc. 624, 140 N. Y.S. 369.

The Supreme Court of Washington in Minnesota Mutual Life Insurance Co. v. Fraser et al., 128 Wash. 171, 222 P. 228, has held that advances of a specified sum each month create no personal liability on an agent to make a repayment of such advancements to the extent that they exceed earnings. An examination of the context of the contract with the aid of surrounding circumstances is required to determine the exact meaning of the term. 2 C.J. pp. 32 and 33; North Western Mutual Life Ins. Co. v. Mooney, 108 N.Y. 118, 15 N.E. 303.

In Schlesinger v. Burland, 42 Misc. 206, 85 N.Y.S. 350, 351, 352, the New York Supreme Court had before it "an agreement for employment as a salesman for a certain commission, the employer to advance a certain sum monthly, which should be charged to and deducted from the commissions 'computed at the end of the period of employment,' which was indeterminate". It was held such a contract does not create a personal liability on the part of the salesman to repay advances in excess of commissions earned. In the course of its opinion the court said: "But we are of the opinion that the advances were not intended as a loan to the plaintiff, and that it was not the intention of the contracting parties when the agreement was made that he should be personally bound for the repayment thereof, except to the extent of his commissions earned. * * * Without a promise to repay, express, or fairly to be implied from the agreement under which the advances were made, a promise to advance money for a particular purpose—as here, the furtherance of the defendant's business—does not import an expectation of its return personally by the person to whom the money was advanced. Unquestionably, it may have the meaning of a loan, if the verb is used in connection with a promise, express or implied, to repay the money. Upon an agreement somewhat like the one under discussion, it was held in North Western Mutual Life Insurance Company v. Mooney, 108 N.Y. 118, 15 N.E. 303, that the particular meaning of the verb 'advance' was to be ascertained with reference to the text in connection with which it was used, and that, unless the latter manifested an intention of repayment by him to whom the money was advanced, a promise to advance it did not import reliance upon the personal credit of the promisee, so as to constitute the latter the debtor of the promisor. Here, as in the case last above alluded to, we find no express promise by the plaintiff to repay the money advanced. The agreement does contain provision to the effect that at the end of the period of employment the defendants should have resort for reimbursement to the plaintiff's accrued commissions, but it will not be seriously contended that this is a promise by the plaintiff to apply more than the amount of his commissions towards the repayment of the moneys advanced. In effect, the presence of the last-mentioned provision points to the mutual intention of the parties that the commissions should constitute a fund which alone should be resorted to for reimbursement of the advances. We are to give reasonable meaning, if possible, to every part of the agreement, rather than to hold a particular clause thereof wholly without import. Flanagan v. Fox, 6 Misc. 132, 26 N.Y.S. 48, affirmed 144 N.Y. 706, 39 N.E. 857. Without this provision for resort to the commissions, the defendants would have had the right to offset any indebtedness of the plaintiff to them".

Of course there are here involved independent contractors instead of salesmen on commission or salaried employees. The contract, however, upon analysis, is subject to the principle announced in the cases just cited. The sections hereinabove set out, and, indeed, the contract as a whole, clearly provide that the so-called advance payments were the only remuneration to be received by the Elliotts, if the total cost of construction should exceed the sum of $110,335. Section 22 expressly provides that in that case "no further payments shall be due to contractors", thereby recognizing the advances as payments for the work done. It will scarcely be contended that whether the Elliotts were to receive any remuneration whatsoever for their efforts depended upon the cost of construction falling below the base cost of $110,335. The payments made were of the nature of installments upon the cost of the work as it proceeded, and were subject to revision and allowances only if the cost of construction should fall below the agreed base, and the remuneration due the contractors be thereby increased. The contract makes no provision, either express or implied, for the

repayment of the so-called advances if the cost of construction should equal or exceed that agreed base. In fact paragraph 6 of the contract expressly provides that the payments made thereunder shall be "an advance payment against any moneys ultimately found to be due and payable to the contractors". In no case was the ultimate amount due the contractors to be less than the payments thus advanced. Thus viewed, the payments made by Socony after the service of the summons in garnishment were monies due the contractors, were therefore subject to that writ, and the finding and judgment of the trial court should accordingly be sustained and affirmed. It is so ordered.