**DONALDSON PUBLISHING CO.,**
Plaintiff,

v.

**BREGMAN, VOCCO AND CONN, INC.,**
Defendant.

Civ. A. Nos. 140–216, 145–280.

United States District Court
S. D. New York.

Oct. 20, 1965.

Rosen, Seton & Sarbin, New York City, for plaintiff.

Conner & Chopnick, New York City, for defendant.

CANNELLA, District Judge.

Declaratory judgment granted in favor of the defendant.

It is agreed by the parties and the court finds, that the action herein for a declaratory judgment arises under 28 U.S.C.A. §§ 1338 and 1400, and is a controversy of a civil nature between citizens of different states, which involves an amount in excess of $10,000.00, exclusive of interest and costs.

The parties further agree that:

1) The plaintiff is a corporation organized under the laws of the State of California, with its principal place of business in Los Angeles and that the defendant is a corporation organized under the laws of the State of New York, with its principal place of business in New York City, in the Southern District of New York;

2) The declaratory judgment seeks to establish the ownership of the "renewal copyrights" of 87 songs written by Walter Donaldson;

3) Walter Donaldson and the defendant corporation, then known as Donaldson, Douglas & Gumble, Inc., entered into an agreement dated May 15, 1928, wherein all musical compositions written in whole or in part by Walter Donaldson during the term of the agreement, were to be delivered to Donaldson, Douglas & Gumble, Inc.;

4) Walter Donaldson did deliver all songs pursuant to the agreement and they are hereto incorporated by reference.[1]

5) All the songs were duly copyrighted and registered by defendant under its own name in the United States Copyright Office. In the registrations, Walter Donaldson was named as sole author or co-author;

6) The publication and mechanical reproduction rights of the defendant in the said musical compositions were subject to the payment by defendant of the royalties as specified in the agreement;

7) During the five year life of the agreement, defendant rendered to Walter Donaldson, statements indicating thereon the royalty payments which Walter Donaldson was paid;

8) Walter Donaldson died on July 15, 1948 prior to the expiration of the original term of copyright of each of said 87 musical compositions. At the time he was survived by Dorothy Donaldson, a divorced wife and therefore not a widow and two children, Ellen Bernice Donaldson Kerslake and Sheila Lynn Donaldson Shea. The children were infants at the time of Walter Donaldson's death;

9) The children have sold, transferred and assigned to plaintiff all their right, title and interest to the songs in question, including any interest in the renewal and foreign copyright protection of them and including all right, title and interest to all past, present and future claims, causes of action or suits.

## FACTUAL BACKGROUND

In 1928, Walter Donaldson, Walter Douglas and Mose Gumble were individually engaged in the music publishing business; Walter Donaldson as a songwriter, Walter Douglas as a sales manager and Mose Gumble as a professional manager. They entered into negotiations to form a music publishing business in which they would be equal stockholders. They consulted Mr. Nathan Burkan, an attorney, who assigned Mr. Charles Schwartz to draw up the necessary documents. A preliminary pre-incorporation agreement dated April 23, 1928 was prepared by him. On May 4, 1928 the ultimate pre-incorporation agreement was signed by the parties. This agreement provided in substance for:

1) The formation of a music publishing corporation to be known as Walter Donaldson Music, Inc., the shares of which would be owned equally by the three incorporators;

2) An agreement by Donaldson "to write and compose musical works for the corporation exclusively, for a period of five years from the date of the incorporation of the company", with the right to have a drawing account against the royalties therein provided;

3) An agreement whereby Douglas would enter "into the employ of the corporation for a period of five years", * * * "as Business Manager", * * and "devote himself exclusively to the rendition of his services to the corporation". As compensation he was "to receive for his services $300 per week";

4) An agreement whereby Gumble would enter "into the employ of the corporation for a period of five years", * * * "as Professional Manager", * * * and "devote himself exclusively to the rendition of his services to the corporation". As compensation he was "to receive for his services $300 per week".

---

1. Schedules A, B, C and D in complaint.

The corporate name adopted was Donaldson, Douglas & Gumble, Inc., since the name Walter Donaldson, Inc. was not available.

In the five year period embraced in the agreement, Walter Donaldson submitted 87 songs to the corporation for publication. Walter Donaldson actually received the weekly drawings of $300.00 for nearly three and one-half years and in addition, advances against expenses. Although the agreement contained a provision for the weekly drawings to increase to $500.00, the increased amount was never paid. As a matter of fact, after three and one-half years the drawings were entirely discontinued due to financial circumstances. At the time, the corporate records indicated Walter Donaldson was overdrawn. Walter Donaldson had other working arrangements besides the corporation work he performed, which conduct was countenanced by the corporation, e. g. 1) Ziegfield agreement; and 2) agreement dated April 8, 1929, with Fox Film Corp., wherein Walter Donaldson and others performed some musical work for Fox Film Corp. In this agreement he was described as an employee of the defendant. This agreement however, was not signed by Walter Donaldson, but was signed by Walter Douglas as attorney in fact for Walter Donaldson; and 3) Z & G agreement. In 1933 Walter Donaldson assigned all his interest, stock or otherwise in Donaldson, Douglas & Gumble, Inc., to the defendant in exchange for a release from the defendant for the amount he was overdrawn on his royalty account. Within one year prior to the expiration of the original term of each of the copyrights in the songs herein involved, the defendant made due and timely application to the United States Copyright Office for a renewal and extension of them for a further term of 28 years, as the proprietor in works made for hire. Defendant claims that, having filed applications for the renewal of each such copyright in its own name, it became the owner of the renewal copyright in each such composition and of all rights in, under and

with respect to each such renewal. The plaintiff's predecessors in interest have received and accepted from defendant $6,000.00 more or less, as royalty earned subsequent to the expiration of the original terms of copyright.

## THE ISSUES

The within action is a consolidated one in which two actions were consolidated on June 30, 1961, pursuant to order of this court. The principal questions herein are two-fold. They are set forth in the pre-trial order as follows:

(a) Whether or not Walter Donaldson with respect to the compositions written by him for the defendant (known in 1928 as Donaldson, Douglas & Gumble, Inc.) was an employee for hire, as such term is used in the Copyright Act, Title 17 U.S.C. Sec. 24, whether under a contract dated May 15, 1928 between Walter Donaldson and the defendant, or otherwise [or whether Donaldson was an independent contractor].

(b) Whether or not the defendant is the proprietor of said 87 compositions written by Walter Donaldson as works copyrighted by a corporate body (otherwise than as assignee or licensee of the individual author) and belong to the defendant as such a corporate body.

The first inquiry therefore centers about the question of whether Walter Donaldson was an employee for hire or independent contractor. To determine this question it is necessary to 1) examine the formation of Donaldson, Douglas & Gumble, Inc.; 2) analyze the status of Donaldson as it appears in his agreement with the corporation and 3) examine the conduct of the parties during the life of the agreement.

■ Donaldson, Douglas and Gumble formed the corporation. Each had special qualities and contributed them to the corporation. There has never been any doubt that Douglas and Gumble were employees of the corporation. They had so stated. In addition their agreements with the corporation were couched in terms of employment and they received a

salary. Walter Donaldson's status presents a clouded picture. He was undoubtedly the outstanding member of the company. He was well known in the industry and already had created a portfolio of songs. What was his intention when he joined together with Douglas and Gumble to form the corporation? The court finds that he deliberately chose to be an employee for hire. The songs herein were written by Donaldson either as sole or co-author for the defendant as employer, under the employment agreement and were works for hire as contemplated under the Copyright Act, 17 U.S.C.A. § 24. All of these 87 compositions were duly copyrighted by the defendant in its own name under its former corporate title, Donaldson, Douglas & Gumble, Inc., between May 28, 1929 and April 12, 1933, inclusive, with Donaldson retaining certain royalty rights as specified in the agreement.

■ It might be argued that Donaldson's relationships with Ziegfield, Fox and Z & G, indicate that he was not an employee for hire, but the courts finds that the conduct of Douglas and Gumble in allowing Donaldson to in effect, breach his exclusive arrangement with the corporation, could be equally consistent with other considerations, e. g., their fondness for Donaldson; the increased prestige to the corporation because of the added prestige of Donaldson; or a so-called farm out. The court holds that the outside employment does not perforce create an independent contractual status on Donaldson.

■ The money arrangement was heavily weighted in Donaldson's favor but this does not compel the conclusion that he was an independent contractor. Under New York law, the arrangement Donaldson had and which he exploited to the extent that he was overdrawn, in effect amounted to a salary. See North Western Mutual Life Ins. Co. v. Mooney, 108 N.Y. 118, 15 N.E. 303 (1888); Kane v. Auto Laks Mfg. Co., Sup., 172 N.Y.S. 275 (1st Dept.1918). See also Posner v. Precision Shapes, Inc., 271 App.Div. 435, 65 N.Y.S.2d 733 (1st Dept.1946) and cases cited therein.

■ The court although allowing the Prager report to be marked in evidence has not considered it in arriving at the determination of this case. The proper foundation for the admission of the report was not laid. 28 U.S.C.A. § 1732.

■ Without mentioning all the circumstances the court has considered, the court is satisfied from an examination of the total picture of Donaldson's relationship with the corporation that he was an employee for hire within the meaning of that term in the music publishing business. This being so, the defendant employer who had become proprietor of the original copyright of works made for hire, is entitled to the renewal rights. Shapiro, Bernstein & Co. v. Bryan, 123 F.2d 697 (2d Cir. 1941); Fred Fisher Music Co. v. Leo Feist, Inc., 55 F.Supp. 359 (S.D.N.Y.1944).

Having determined Donaldson to be an employee for hire and that the defendant is entitled to the renewal rights, the court does not deem it necessary to determine the second issue (issue (b) supra).

A declaratory judgment will therefore issue in favor of the defendant, to the 87 songs in question. The registration by the defendant is found to be the valid and effective registration and that of the plaintiff's predecessors is found to be null and void.

Submit order.