303 So.2d 352 (1974)
Daniel J. TANNEN, Appellant,
v.
EQUITABLE LIFE INSURANCE COMPANY OF WASHINGTON, D.C., Appellee.
No. 74-227.
District Court of Appeal of Florida, Third District.
October 29, 1974.
Rehearing Denied December 10, 1974.
*353 Courshon & Berk and Matt Weinstein, Miami Beach, for appellant.
Shutts & Bowen and William J. Kendrick, Miami, for appellee.
Before BARKDULL, C.J., and HENDRY and HAVERFIELD, JJ.
HENDRY, Judge.
Appellant, defendant in the trial court, seeks review of an adverse final summary judgment awarding the plaintiff insurance company a sum of $11,699.80 plus interest and costs.
The facts of this case are as follows: On August 18, 1971 the defendant entered into an employment contract as a life insurance agent for the plaintiff. On November 17, 1971, plaintiff notified the defendant that his employment was terminated. Thereafter, the plaintiff instituted this action against the defendant alleging that pursuant to an agent's contract and a supplemental general agent's contract entered into by the parties the defendant was indebted to the plaintiff.
The material allegations of the complaint derive from two pertinent provisions of the contract. The first is found in the agent's contract at paragraph 18, which provides:
"INDEBTEDNESS 18. Any indebtedness owing to the Company by the Agent, whether arising under this Contract or otherwise, shall be a first lien against any commissions, compensation, or other monies accrued or to accrue to the Agent, and the Company shall have the right to apply all payments or credits herein provided against such indebtedness, at such times and in such order as it may elect."
The second relevant paragraph is contained in the general agent's supplemental contract at paragraph 9:
"QUALITY BUSINESS BONUS 9. The Quality Business Bonus shall be an amount equal to four dollars ($4.00) per thousand of new insurance on policies issued and paid for while this supplement is in effect to the credit of both the General Agent and Agents appointed and assigned to work under his supervision, but only on such policies which remain in force for a period of fifteen (15) months or longer from the date of issue, with premiums paid in cash to and accepted by the Company for said period.

*354 "The Company will advance such Bonus when the policy is issued and the full initial premium is paid in cash to and accepted by the Company. Should any policy on which such Bonus has been advanced terminate before it has been in force fifteen (15) months with premiums paid in cash to and accepted by the Company for such period, the amount of such Bonus advanced shall become an indebtedness to the Company, and subject to the provisions of Paragraph 18 of the aforementioned Agent's Contract.
"The amount of insurance referred to above shall be determined in accordance with the Company's applicable published rules for new business credit at the time the policies are issued."
In the trial court, the plaintiff filed an affidavit by an assistant vice president stating that between August 27, 1971 and November 13, 1971 the defendant submitted new insurance policies to the plaintiff for issuance. In accordance with paragraph 9 above, the plaintiff then advanced a total sum of $11,699.80 on these new policies to the defendant as a quality business bonus.
The affidavit continued to relate that the policies all lapsed prior to fifteen (15) months from the date of issue, and therefore the defendant was indebted to the plaintiff for the above bonus previously paid to him.
On this appeal, the defendant raises two points which he contends constitute reversible error on a matter of law. For our purposes, we think these contentions may be combined as a single point which we believe is raised by the defendant's second point as follows:
"Does the language of the contract create an express or implied agreement by the agent (defendant herein) to be personally liable for cash advances of commissions to him by the principal (the plaintiff)?"
It is surprising that the parties have cited no Florida cases which have confronted this question, nor has our research uncovered any decision in this state on this precise issue. In other jurisdictions, we find many cases considering this point, and the law is well-settled. See Annot., 32 A.L.R. 3d 802 [and cases cited therein].
It is the general rule that absent an express or implied agreement in which the agent-employee covenants to repay to his principal-employer the excess of advances over commissions earned, the employer may not hold the employee personally liable to repay. E.g., Northwestern Mut. Life Ins. Co. v. Mooney, 108 N.Y. 118, 15 N.E. 303 (1888); Richmond Dry Goods Co. v. Wilson, 105 W. Va. 221, 141 S.E. 876 (1928); Agnew v. Cameron, 247 Cal. App.2d 619, 55 Cal. Rptr. 733, 32 A.L.R.3d 796 (1967) [and cases cited therein]; Slabodnik v. Travelers Ins. Co., 489 P.2d 604 (Colo. App. 1971).
The rationale for the rule is that advances are generally in the nature of salary, and not a loan to the employee, unless from the language of the agreement it is explicit that the advances are intended to be a loan. See, Northwestern Mut. Life Ins. Co. v. Mooney, supra; Arbaugh v. Shockney, 34 Ind. App. 269, Syll. 5, 71 N.E. 232, 72 N.E. 668 (1904); Joseph Toker, Inc. v. Cohen, 67 N.J. Super. 68, 169 A.2d 838 (1961); Badger v. Nu-Tone Products Co., 162 Colo. 216, 425 P.2d 698 (1967). It is assumed that employment agreements like the one before us in the instant case are imposed by employers with a superior bargaining position. Moreover, since the funds have previously been transferred to the agent, repayment to the employer operates as a forfeiture, unless there is a clear understanding between the parties that the advances were intended as a personal indebtedness of the agent.
In addition, well-rooted principles of law surrounding construction of contracts are applicable in a case of this nature, *355 and any ambiguity of language within the contract will be strictly construed against the party who chose the language and drafted the contract. See, Badger v. Nu-Tone Products Co., supra; Bouden v. Walker, Fla.App. 1972, 266 So.2d 353.
We might add that a further reason for generally treating advances as salary rather than a loan is that the advance is given to the agent to promote the principal's business; and therefore a mutual benefit is conferred. The enterprise is akin to a joint venture in which it is expected that a fund will be created from which both parties will be compensated  the agent for his time and labor and the principal for his advanced money. See, Bardwell v. Szatmary, 99 So.2d 420 (La. App. 1957).
With these legal principles in mind, the fundamental issue before this court is a proper construction of the language of paragraphs 18 and 9 in the two instruments comprising the contractual obligation between the parties.
We cannot agree with the appellee's contention that the language therein is clear and unambiguous and imposes personal indebtedness in this case. Basically, the appellee relies on the inclusion in paragraph 9 of the word "indebtedness" to sustain its position that the parties expressly contracted that the advances were in the nature of a loan and that the defendant would be personally liable to repay the money advanced if the policies terminated before fifteen months had passed from the date of issuance.
We think this argument is refuted by the contractual language itself immediately following the reference to "indebtedness," to-wit: "... and subject to the provisions of Paragraph 18 of the aforementioned Agent's Contract."
Paragraph 18 clearly contemplates that repayment of "(a)ny indebtedness" owed by the agent to the company will come from a fund, and that a first lien on the fund will lie in favor of the company so that the company would have the right to credit to itself from the fund the amount of indebtedness.
Thus, as was reasoned in Northwestern Mut. Life Ins. Co. v. Mooney, supra, it is apparent to us that the advance did not contemplate personal liability, but instead "It is an advance of money upon personal security, but not upon personal credit." (See, 15 N.E. at p. 306)
Had the parties intended the advances to constitute a loan they might simply have substituted the words "personal indebtedness," deleted the clause immediately thereafter as well as paragraph 18. Compare, Jefferson Standard Life Ins. Co. v. Herrick, 67 N.E.2d 926 (Ohio App. 1943).
Therefore, for all of the foregoing reasons and upon the authorities cited and discussed, we conclude that the judgment appealed must be reversed and vacated, and the cause remanded to the trial court with directions to enter judgment in favor of the defendant-appellant.
Reversed and remanded with directions.