752 A.2d 883

BANKS ENGINEERING CO., INC.

v.

Michael POLONS and Denise Polons, His Wife.

Appeal of Michael Polons.

Supreme Court of Pennsylvania.

Argued Sept. 15, 1998.

Decided June 23, 2000.

Jon Hogue, Sandra Lannis, for Michael Polons.

Dennis J. Gounley, for Banks Engineering.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

ZAPPALA, Justice.

This is an action by a corporation to recover the difference between the amount of money advanced to a salesman and the amount of commissions earned prior to the salesman's election to terminate the contract. We granted allowance of appeal to consider whether *Snellenburg Clothing Co. v. Levitt,* 282 Pa. 65, 127 A. 309 (1925), which the lower courts found controlling, should be overruled. We conclude that *Snellenburg Clothing* should be overruled, and remand the matter to the common pleas court for further proceedings.

Banks Engineering Company, Inc., the Appellee, distributes pneumatic and hydraulic equipment components. In 1992, Ed Banks, the company's general manager, and Michael Polons, the Appellant, negotiated an agreement under which Polons would work as an independent sales representative for Banks Engineering. The agreement, executed on July 1, 1992, pro-

vided that Polons would be entitled to receive certain commissions based on gross sales to new accounts.[1]  The agreement also provided:

> To compensate for low commission payments due to low initial sales, Banks will pay a draw against commission. This draw will continue until the commissions exceed the draw and this contract is in effect. Once the commissions exceed the draw the rate of payment will continue at the rate of the draw until the total amount of the draw is compensated for by commissions in excess of the draw or by other means. When the total draw has been compensated for by commissions earned or other means the full commission will be paid and the draw eliminated.

The rate of the draw was set at $2800 per month, to be paid within fifteen days of the end of each month, with commissions being credited in the month following the month in which the order was paid.

When Polons picked up his first check in August of 1992, Banks had him sign what he termed an "addendum" to the agreement, which contained an acknowledgment of receipt of the check and further stated:

> It is understood that this draw is a non-interest loan and is to be paid back by commissions earned or by other means. In the event of termination of this contract any and all outstanding draw amounts will become due within ninety days. After ninety days any amounts still due will accrue with interest at prime rate compounded annually.

Polons worked for Banks Engineering for slightly more than a year and a half, each month receiving a check for $2800 along with a statement showing gross sales, the amount of commissions credited for the previous month, the difference between the draw and the commissions, and a cumulative total of these figures. The running total of the difference between draw and commissions paid was labeled "Balance Due Corporation".

1.  Commissions based on sales of new product lines obtained by Polons for Banks Engineering were also included in the agreement.

In April of 1994, Polons terminated the agreement. Banks Engineering advised Polons by letter that the draw in excess of commissions totaled $38,989.86, which he was expected to repay pursuant to the agreement. The letter also indicated that if the full amount was not paid within ninety days, interest would be assessed in accordance with the August 1992 addendum. When Polons failed to respond, Banks Engineering filed a breach of contract action seeking the difference between the draw and commissions, plus interest.[2]

Following a non-jury trial at which Banks and Polons were the only witnesses, the court ruled in favor of Banks Engineering on the breach of contract claim. In its opinion denying post-trial motions, the court stated that the case was controlled by *Snellenburg Clothing.* The court declined to award interest, holding that the August 1992 addendum was unenforceable for lack of consideration.[3]

On appeal to the Superior Court, Polons argued that the court's interpretation of the contract was erroneous, and that *Snellenburg Clothing* should not apply because, inter alia, it was "out of date" and its rationale had been rejected by most other jurisdictions. Superior Court took note of an annotation in A.L.R.3d, examined several cases from other jurisdictions involving the duty of an employee or agent to repay advances in excess of commissions, and acknowledged the "compelling rationale behind the majority view." Nevertheless, recognizing that as an intermediate appellate court it lacked authority to overrule *Snellenburg Clothing,* the court affirmed the judgment.

In *Snellenburg Clothing,* Nate Levitt was engaged by the company as a traveling salesman. The company agreed to pay him a specified commission and " 'to advance a drawing

2. As customers paid for orders in the months following Polons's departure, a credit was entered in favor of Polons against the "balance due corporation," thus Banks Engineering's complaint sought damages of approximately $36,000, and at the time of trial the amount claimed was about $34,500.

3. Banks did not appeal the trial court's determination that the addendum was not a part of the original agreement and was not enforceable as a separate agreement.

account of $15,000 per annum' " plus traveling expenses, " 'all such advances, either for drawing account or traveling expenses, to apply against and be deducted from' " Levitt's total earnings. After the relationship was terminated by mutual consent, the company sued Levitt to recover payments in excess of commissions earned. Levitt argued in defense that the advances were paid to him as salary and were not to be repaid except as deductions from his earnings. The common pleas court ruled in favor of the company, and our Court affirmed. We wrote

> The parties apparently did not anticipate earnings falling below the amount of the advances, and consequently made no express provision for the contingency. This, however, is no reason for reading into the contract something it does not contain and thus make a new contract for the parties. Had they intended the advances should be in lieu of salary and treated as such in event the commissions earned by defendant were insufficient to balance the account, it would have been a simple matter to have so stated. In absence of provision in the contract warranting such construction, we feel constrained to treat the advances strictly as such and require return of any excess.

282 Pa. at 67–68, 127 A. at 310.

Polons argues, as he did in Superior Court, that *Snellenburg Clothing* should be overruled, offering this quotation in support:

> [T]he overwhelming preponderance of caselaw is to the effect that while the parties may provide in the agreement for personal liability, in the absence of language, or at least some evidence, indicative of such an intention, it will generally be presumed that no liability was intended and that the principal's sole source of reimbursement was intended to be the fund contemplated, that is, the anticipated commissions. . . .

Michael J. Greene, Annotation, *Personal Liability of Servant or Agent for Advances or Withdrawals in Excess of Commissions Earned, Bonus or Share of Profits,* 32 A.L.R.3d 802 (1970).

██ It is helpful to begin by clarifying the sense in which *Snellenburg Clothing* is understood to create a *presumption* in favor of repayment of draws against commissions, and cases from other jurisdictions a contrary *presumption*. Neither establishes a presumption in the sense of requiring that a particular inference be drawn from the proof of certain facts. Rather, each presumes a certain meaning for the terms used by the parties. The Court in *Snellenburg Clothing*, for instance, understood "advance" to include by definition an expectation of repayment. Absent specific language or other evidence indicating that the parties gave a different meaning to the term, the Court applied this meaning in construing their agreement. This is the import of the Court's statement that it felt "constrained to treat the advances strictly as such." 282 Pa. at 68, 127 A. at 310. In other jurisdictions, the courts interpreted the term "advance" differently. For example, in *Tannen v. Equitable Life Insurance Company of Washington*, 303 So.2d 352 (Fla.App.1974), the court explained

advances are generally in the nature of salary, and not a loan to the employee, unless from the language of the agreement it is explicit that the advances are intended to be a loan. . . . It is assumed that employment agreements like the one before us in the instant case are imposed by employers with a superior bargaining position. Moreover, since the funds have previously been transferred to the agent, repayment to the employer operates as a forfeiture, unless there is a clear understanding between the parties that the advances were intended as a personal indebtedness of the agent.

*Id.* at 354 (citations omitted).

██ Having in mind the varied understandings of what is contemplated by an "advance" or "draw", upon due consideration we are of the opinion that the assumption underlying the *Snellenburg Clothing* decision does not necessarily comport with common experience and understanding, and therefore we overrule that decision. It is equally erroneous, however, to assume that "advances" or "draws" are in the nature of salary, and thus to be repaid *only* from commissions. Rather, it is

more appropriate to recognize that such terms are neutral with respect to the issue of repayment beyond commissions earned, and courts should follow the rules of contract interpretation generally applicable when parties to a contract disagree as to the meaning of its terms. *See, e.g., Pritchard v. Wick,* 406 Pa. 598, 178 A.2d 725 (1962).[4] *See generally,* Restatement (Second) of Agency § 382 (1958), comment d: ("Whether or not money given by a principal is given as an advance and is to be repaid by the agent in the event that his commission or other compensation does not amount to the sum advanced, is dependent upon the interpretation of the contract between them.")

This case illustrates the flaw in the reasoning of the cases establishing a presumption *against* the obligation to repay advances in excess of commissions. To take but one example, as noted above one of the reasons offered in support of this approach is the assumption that such agreements are imposed by employers, who have superior bargaining position. This may be true in some or even many cases, but there is neither logical nor empirical basis for approaching any particular case with this preconception in mind. The mere fact that Banks Engineering operates as a corporation, for instance, does not justify the assumption that it thereby enjoyed superior bargaining power. The record indicates that Banks Engineering is a family corporation owned by Ed Banks, his wife, and their daughter. Moreover, it appears from the testimony of both Banks and Polons that they personally negotiated the terms of the agreement back and forth over a period of time, beginning with a draft produced by Banks. It was not a "take it or leave it" form presented for Polons's signature. Indeed, Banks Engineering had not advertised for or otherwise solicited the services of a salesman. Rather, Polons approached Banks Engineering representing himself as an experienced salesman

---

4. The court should first attempt to interpret the contract, that is, to determine the meaning attributed by the parties to their expressions of agreement, through the use of standard rules of interpretation. Depending upon the evidence, however, the court may find it necessary to supply a term which is reasonable under the circumstances to rectify the parties' omission. *See* Restatement (Second) of Contracts § 204 (1979); Murray On Contracts § 90.

in the area, Polons prepared the sales projections on which the anticipated commissions and amount of the draw were based, and Polons agreed to be compensated by straight commission rather than salary. We cite this evidence not to indicate what weight it should be given in deciding the case, but to demonstrate the fallacy of the decisional model which assumes a state of affairs that may or may not exist.

Since the evidence will vary from case to case, we find no cause to assume a particular interpretation and thereby assign the employer the burden of proving a contrary meaning. Indeed, our purpose in overruling *Snellenburg Clothing* is to remove precisely the same burden from the employee. Rather, the employer's burden, as the party filing the complaint, is to produce sufficient evidence of entitlement to repayment to withstand a nonsuit. Beyond this, each party must offer the court evidence and advocate its position, and the court must weigh the plausibility of one interpretation against the other to ascertain the parties' respective rights and duties.

The common pleas court decided this case strictly under the authority of *Snellenburg Clothing*, which it described as "impos[ing] a duty upon the one receiving the payments to return the excess payments in the event commissions failed to equal the advances made." Opinion at 3. Because we overrule that decision herein, we shall remand the matter to the common pleas court to interpret the contract by considering the evidence adduced by both parties.[5]

Chief Justice FLAHERTY files a Concurring and Dissenting Opinion.

[5]. In interpreting contracts executed before this decision, courts may no longer rely *as a matter of law* on the meaning of terms such as "advance" or "draw" assumed in *Snellenburg Clothing*. Nevertheless, a party may argue *as a matter of fact* that it relied on that understanding in making the agreement, perhaps even to the degree that the party understood Pennsylvania law to require full repayment of advances or draws. In other words, the existence of the *Snellenburg Clothing* presumption at the time the contract was drafted may be relevant in discerning the intent of the parties.

Justice NIGRO files a Concurring and Dissenting Opinion.

Justice SAYLOR files a Concurring and Dissenting Opinion in which Chief Justice FLAHERTY joins.

FLAHERTY, Chief Justice, concurring and dissenting.

I join Mr. Justice Saylor's concurring and dissenting opinion. I write separately only to note that, despite the majority's assertion to the contrary, there is a logical basis for adopting the presumption against liability on the part of sales agents "that comports with common experience and understanding." As a general rule, employers are in a position of superior bargaining power and should bear the burden of rebutting this presumption. Indeed, the circumstances of the present case belie the majority's claim that Banks was not in the superior position. Regardless of appellee's corporate status, his refusal to release Polon's first paycheck unless he signed the addendum certainly seems to indicate that Banks was in a superior position in this relationship and that this was a "take it or leave it" proposition at that point.

In any event, the majority correctly states the court should interpret the language of the agreement and the parties' understanding of it in order to determine the outcome of this type of case. The plain language of the agreement states that "[t]his draw will continue until the commissions exceed the draw *and this contract is in effect*" and "*once commissions exceed the draw* ... payment will continue at the rate of the draw until the ... draw is compensated for by commissions ... or by other means. When the ... draw has been compensated for ... the full commission will be paid and the draw eliminated." This language indicates that the anticipated repayments of advances, whether by commissions or other means, would occur during the expected life of the contract and not after its termination. The language of the addendum requiring repayment after termination is further evidence that the parties understood that the agreement itself did not require such repayment.

In this case, the contract was no longer in effect, the commissions never exceeded the draw and the draw had never

been compensated for during the life of the contract. The contract explicitly provided that the draw and repayment of advances applied solely during the life of the contract. Additionally, the phrase "by other means" is irrelevant; it too only applied during the life of the contract. Had the addendum not failed for lack of consideration and been determined to be a proper modification of the contract, appellee's argument might have been more convincing since the addendum expressly provided for repayment in the event of termination. However as the addendum failed, so must appellee's argument. I do not believe that a remand is necessary, since the plain language of the agreement would refute any attempt to rebut the presumption.

NIGRO, Justice, concurring and dissenting.

I agree with the majority that *Snellenburg Clothing Co. v. Levitt* should be overruled. However, under the facts of this case I would find it unnecessary to remand to the trial court, as the parties' unambiguous contract terms are determinative of the outcome.

*Snellenburg* stands for the proposition that, where the parties' agreement fails to address whether a draw in excess of commissions earned is to be repaid to the employer, the employee is obligated to repay such draw. However, I maintain that the instant case has never been controlled by *Snellenburg* since the agreement between Banks and Polons did address the repayment. Moreover, as I believe the terms of the written contract between Banks and Polons does not provide for repayment of the draw beyond the termination of the contract, I see no reason to remand the case.

Here, as in any contract dispute, the court's primary goal when interpreting a contract is to determine and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. *O'Brien Energy Systems, Inc. v. American Employers' Ins. Co.*, 427 Pa.Super. 456, 461, 629 A.2d 957, 960 (1993). To make this determination, the court looks to what the parties have clearly expressed, as the law does not assume that the language of the

contract was chosen carelessly. *Meeting House Lane, Ltd. v. Melso,* 427 Pa.Super. 118, 126, 628 A.2d 854, 857 (1993). Furthermore, the court recognizes that the parties have the right to make their own contract; it is not the function of the court to rewrite it or to give it a construction in conflict with the accepted and plain meaning of the language used. *Id.* Banks, as party to the Polons agreement, is wedded to the provisions it drafted for repayment which, by the plain meaning of those provisions, do not extend beyond the life of the contract.

The contract between Banks Engineering and Michael Polons addressed the repayment of Polons' draw, providing that "[t]his draw will continue until the commissions exceed the draw *and this contract is in effect* .... Once commissions exceed the draw ... payment will continue at the rate of the draw until the draw is compensated for by commissions ... or by other means. When the ... draw has been compensated for ... the full commission will be paid and the draw eliminated." (Emphasis added). Thus, pursuant to the plain meaning of the contract's terms, it is evident that Banks was entitled to reimbursement of its advances so long as Polons was still under the contract, but that the contract does not provide for reimbursement in the event of his termination. Insofar as the contract was drawn up by the employer, Banks Engineering, Banks was in the position to elaborate beyond the language it used if it so chose. We must therefore infer that Banks intended to address the repayment of Polons' draw only to the extent that the contract expressed.

Thus, I believe that the parties are bound by the terms of the contract between them, which does not provide for repayment of the draw except while the contract is in effect and, once Polons' employment was terminated, so, too, was his obligation to continue to repay the draw. Therefore, based on the explicit language of the contract, I would find, without remanding for further consideration of evidence, that the plain terms of the contract has determined that Polons no longer has an obligation to repay the draw.

SAYLOR, Justice, concurring and dissenting.

I agree with the majority that *Snellenburg* should be over-turned, and, in its place, I would adopt the presumption against liability on the part of sales agents for the return of past advances. Since, in this case, I find no clear contractual expression to the contrary, nor sufficient evidence of contrary mutual intent, I would permit such presumption to carry.

Chief Justice FLAHERTY joins this concurring opinion.