518 A.2d 1267

**Judith A. MAJOR, Appellee,**

**v.**

**Clyde D. MAJOR, Appellant.**

Superior Court of Pennsylvania.

Argued April 1, 1986.

Filed Dec. 18, 1986.

Jerry B. Chariton, Wilkes-Barre, for appellant.

John S. Fine, Jr., Wilkes-Barre, for appellee.

Before McEWEN, OLSZEWSKI and KELLY, JJ.

KELLY, Judge:

This is an appeal from the Judgment entered denying appellant's exceptions to the special master's report and granting appellee's petition to reopen the previous uncontested award of equitable distribution of marital assets. For the reasons stated below, we vacate the order of the lower court, and remand for further proceedings.

Judith and Clyde D. Major were married December 22, 1962. Clyde Major, appellant herein, had been a flight engineer in the Air Force from before the time of his marriage until his retirement in February 1981. On December 8, 1981 appellee Judith Major filed a complaint in divorce, alleging indignities to the person. A special master was appointed; his report recommending the grant of a divorce was filed on October 31, 1982. Counsel filed a stipulation permitting bifurcation of the divorce action from the marital property disposition on December 2, 1982; that same day the decree in divorce was entered.

The same special master took testimony regarding the property distribution and filed his report and recommendations on March 14, 1983. The main assets distributed included the marital home and land in Luzerne County, some undeveloped parcels of land in Texas, the two cars,

home furnishings, a life insurance policy and appellee's employee stock plan assets. As no exceptions were filed to the report and recommendation of the master, a final order was entered on March 29, 1983.

Sometime on or about October 17, 1983, appellee filed a petition for rule to show cause as to why the issue of equitable distribution should not be re-opened to include appellant's military retirement pension. No mention of the pension benefits had been made in previous court records. The special master was re-appointed and filed a report on July 31, 1985, withholding a recommendation on procedural aspects of re-opening the final order, but recommending that the pension be recognized as marital property. Appellant filed exceptions which were denied by the trial court; a final order was entered and reduced to judgment on October 17, 1985, granting appellee a share of the military pension benefits. Appeal to this court timely followed.

Appellant presents four issues for review. He contends that: his military retirement pay is not marital property; 23 P.S. § 401 (j) prohibits the award of equitable distribution because at the time of the divorce in December, 1982, appellee had no vested right to the pension; assuming *arguendo* the pension is marital property, appellee waived her right to claim her portion by her failure to file exceptions to the March 29, 1983 order; and the lower court erred in citing in its opinion an unpublished memorandum of this court. We shall address these issues seriatim.

## I

The issue of whether Pennsylvania will recognize a military retirement pension as marital property is one of first impression. Equitable distribution of marital property in the Commonwealth is governed by the Divorce Code, 23 P.S. § 401 et seq., and by the Rules of Civil Procedure, Rule 1920.1 et seq. Specifically, the applicable portions of the law relating to distribution of marital property are as follow:

## § 401. Decree of court

(c) In all matrimonial causes, the court shall have *full equity power and jurisdiction....*

(d) In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions as the court deems just *after considering all relevant factors....*

(6) The sources of income of both parties, *including but not limited to medical, retirement, insurance or other benefits.*

(e) For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except:

. . . . .

(4) Property acquired after separation until the date of divorce, provided however, if the parties separate and reconcile, all property acquired subsequent to the final separation until their divorce.

. . . . .

(6) Veterans' benefits exempt from attachment, levy or seizure pursuant to the act of September 2, 1958, Public Law 85–857, 72 Statute 1229, as amended, except for those benefits received by a veteran where such veteran has waived a portion of his military retirement pay in order to receive Veteran's Compensation.

(f) *All property, whether real or personal, acquired by either party during the marriage is presumed to be marital property* regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (e).

. . . . .

(j) whenever a decree or judgment is granted which nullifies or absolutely terminates the bonds of matrimony, any

and all property rights which are dependent upon such marital relation, *save those which are vested rights*, are terminated unless the court otherwise expressly provides in its decree in accordance with subsection (b)....

(Emphasis added).

From the clear language of the Divorce Code we find military pension benefits to be includable as marital property. First, a pension is property acquired by the enlisted party during the marriage. In this case, appellant was enlisted in the Air Force at the time of the marriage in 1962 and remained in the military until his pension fully vested after 20 years, retiring in 1981. Thus 18 of the 20 years of pension fund assets are attributable to the period of the marriage. Second, none of the seven exceptions listed under Section 401(e) apply to military retirement funds; subsection (6) refers to the exemption of military disability compensation, not pension benefits. Finally, we are persuaded by the unambiguous statutory purpose as stated in Section 401(f), that all property acquired during marriage is presumed to be marital. Since this presumption has not been overcome by a demonstration that the pension falls within a statutory exception, we hold that military pension benefits are marital property, to the extent that they are acquired during marriage.

Our holding today is in accord with the trend of recent decisions in Pennsylvania. Although the issue of whether military pensions are marital property has not been decided in Pennsylvania prior to this case, the issue of whether other pensions are marital property has been decided. Pension benefits, both vested and non-vested, have been designated as marital property by the courts of this Commonwealth. *See Barnhart v. Barnhart*, 343 Pa.Super. 234, 494 A.2d 443 (1985); *Flynn v. Flynn*, 341 Pa.Super. 76, 491 A.2d 156 (1985); *Braderman v. Braderman*, 339 Pa.Super. 185, 488 A.2d 613 (1985); *King v. King*, 332 Pa.Super. 526, 481 A.2d 913 (1984). "[O]nly that portion of the pension attributable to the period commencing with the marriage and ending on the date of separation is marital property

within the meaning of the Divorce Code." *King*, 332 Pa.Superior Ct. at 530, 481 A.2d at 915. "Since a pension benefit is an economic resource acquired with funds that would otherwise have been utilized by the parties during their marriage to purchase other assets, it constitutes marital property." *Flynn*, 341 Pa.Superior Ct. at 83, 491 A.2d at 160. Moreover:

> In many equitable distribution cases, an employee's retirement plan represents one of the most valuable assets accumulated by the marital parties. Often, the marital home is the only other major asset. As a result, questions relating to whether these benefits should be classified as marital property subject to equitable distribution are vital to Pennsylvania's system of equitable distribution.

*Braderman*, 339 Pa.Superior Ct. at 191, 488 A.2d at 616. (Footnotes omitted).

Military pensions are as other pensions and vital to equitable distribution. Appellant argues that because federal pensions are not deducted from employee paychecks, but represent current income for inactive duty status, the rationale of *Flynn*, etc., is not applicable to military pensions. However, we disagree. In light of the sacrifices of those families in the armed services, including long periods of separation while on duty or on assignments overseas, the contributions of both spouses to the household enable the enlisted spouse to continue serving until the pension vests after 20 years of service. Thus we reject appellant's argument that military pension benefits are not marital property.

## II

Appellant's second argument arises due to the unique circumstances surrounding the law of military pensions that existed when the parties herein filed for divorce in 1981. On June 26, 1981 the United States Supreme Court filed its decision in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). The Court in *McCarty* held

that military pensions were exempted from inclusion in equitable or community property distributions because the federal regulation of military pay and benefits preempted states from exercising dominion over the funds. Thus, when the parties herein filed for divorce in December 1981, appellant's military pension was ineligible for inclusion in the marital property division [1].

*McCarty* did not remain the law. The Congress, responding quickly to the widespread criticism of that decision, enacted the Uniformed Services Former Spouses' Protection Act (USFSPA), Department of Defense Authorization Act, 1983, Pub.L. 97–252, § 1006(a), 96 Stat. 737 (1982), effective February 1, 1983, 10 U.S.C. § 1408 note (1982). The USFSPA returned to the states the authority to determine whether military pensions are to be considered individual property of the service member, or marital property of the member and spouse. The USFSPA provided that its effective date of application be retroactive to June 25, 1981, the day before the *McCarty* decision was handed down by the U.S. Supreme Court.

Appellant's second argument contends that, because the divorce was granted on December 2, 1982, prior to the effective date of the USFSPA, appellee at that point in time had no right to claim any of appellant's pension benefits as her share of marital property. Under Section 401(j) of the Divorce Code, all property rights not vested as of the date of divorce are terminated. We however, refuse to accord such an interpretation to the facts or the law.

Essentially, appellant is requesting that we give *McCarty* the status of effective law, when the clear Congressional intent is to eradicate the effects, if any, of that decision. The Senate Report accompanying the Act unequivocally expresses the legislative intent to render *McCarty* a nullity:

1. However, the pension was eligible for consideration as one of the totality of financial circumstances affecting appellant's situation. Yet, we can find in the record no mention of the pension, either in the Master's Report filed in March 1983 or in the testimony predating the report. See discussion *infra.*

> The provisions of S. 1814 reversing the effect of the *McCarty* decision are retroactive to June 26, 1981, the date on which the U.S. Supreme Court issued that decision. *That is, the committee intends the legislation to restore the law to what it was when the courts were permitted to apply State divorce laws to military retired pay.* Former spouses divorced in the interim period between the McCarty decision and the effective date of this law will have *the opportunity to return to court to have their decrees modified in light of this legislation.* However, nothing in the bill would mandate payments out of retired pay which had been disbursed during the period between the date of the *McCarty* decision and the effective date of this legislation.

S.Rep. 502, 97 Cong., 2d Sess. 5–6, reprinted in 1982 U.S. Code Cong. & Ad. News 1555, 1596, 1599–1600. (Emphasis added). Although prior to the *McCarty* decision, Pennsylvania courts had not been presented with the issue of the status of military pensions, economic justice is clearly furthered by including the pension in the marital property. We believe that, had the issue been raised previously, our courts would have decided as we decide today. We find no equitable justification to penalize appellee merely because she is the first to raise the issue. Therefore, we hold that appellee did not lose her right to claim any portion of the interest she held in the military pension merely because *McCarty* was the law at the time the divorce was entered; the USFSPA, rather than *McCarty*, applies to all divorce decrees filed after *McCarty*, from June 25, 1981 to the present.

Our decision to apply the USFSPA retroactively is supported by the decisions in other states throughout the country. Courts in other states have held similarly:

> *See Walentowski v. Walentowski,* 100 N.M. 484, 672 P.2d 657 [1983]; *Cameron v. Cameron,* 641 S.W.2d 210, 212–13 (Tex.1982); *Griggs v. Griggs,* 107 Idaho 123, 125–27, 686 P.2d 68 (1984); *In re Marriage of Hopkins,* 142 Cal.App.3d 350, 355–61, 191 Cal.Rptr. 70 (1983); *Coates v.*

*Coates,* 650 S.W.2d 307, 309–10 (Mo.Ct.App.1983); *Steczo v. Steczo,* 135 Ariz. 199, 200–01, 659 P.2d 1344 (Ct.App. 1983); *Chase v. Chase,* 662 P.2d 944, 945–46 (Alaska 1983); *Hartzell v. Hartzell,* 434 So.2d 353, 354–55 (Fla. Dist.Ct.App.1983); *Faught v. Faught,* 67 N.C.App. 37, 47–48, 312 S.E.2d 504 (1984); *Contra Psomas v. Psomas,* 99 N.M. 606, 609, 661 P.2d 884 (1982), overruled in *Walentowski v. Walentowski, supra; Inzinna v. Inzinna,* 456 So.2d 691, 693 (La.Ct.App.1984).

*In re MacDonald,* 104 Wash.2d 745, 709 P.2d 1196, 1199 (1985); *see also Castiglioni v. Castiglioni,* 192 N.J.Super. 594, 471 A.2d 809 (1984); *Smith v. Smith,* 458 A.2d 711 (Del. Fam. Ct.1983).

These courts, as do we, rely on the legislative intent behind the USFSPA. The intent was to grant relief to those parties who mistakenly treated military pensions as separate property due to the *McCarty* decision. "This result is necessary to promote the purposes of the USFSPA and to avoid unfairness to the small group of litigants who would otherwise be treated differently based on the date on which their divorce decree was filed." *In Re MacDonald, supra.* Therefore, even though appellee's divorce was entered prior to passage of the USFSPA, appellee's interest in the military pension did not terminate with the divorce decree.

## III

Appellant contends that by her failure to file exceptions protesting the omission of the pension from marital property prior to the order becoming final, appellee has waived her right to raise this issue. *See* Pa.R.C.P. 1920.52–55. Appellant correctly points out that, although at the time the divorce was filed in December 1982, *McCarty* was the law, when the property settlement was recommended by the special master in 1983, the USFSPA had become law. Appellee did not file exceptions to the order or in any way cite the USFSPA; rather appellee petitioned to re-open the

judgment in October 1983, seven months after the property distribution settlement was finalized in March.

■ The Divorce Code does permit reopening of a divorce decree under certain circumstances.

### § 602. Opening or vacating divorce decrees

*A motion to open a decree of divorce* or annulment may be made only *within 30 days* after entry of the decree and not thereafter. Such motion may lie where it is alleged that the decree was procured by intrinsic fraud or that *there is new evidence relating to the cause of action* which will sustain the attack upon its validity. *A motion to vacate* a decree or strike a judgment alleged to be void because of a fatal defect apparent upon the face of the record, must be made *within five years* after entry of the final decree. Intrinsic fraud is such as relates to a matter adjudicated by the judgment, including perjury and false testimony, whereas *extrinsic fraud relates to matters collateral to the judgment which have the consequence of precluding a fair hearing or presentation of one side of the case.*

23 P.S. § 602. Appellee, however, has not demonstrated that she is entitled to the relief embodied in Section 602 because: 1) she did not petition for reopening within 30 days; 2) she has not argued that fraud was perpetrated; 3) she presents no new evidence relating to the cause of action. Thus we must conclude that appellee was not entitled to have the decree reopened pursuant to Section 602.[2]

**2.** We leave open the issue of whether general inherent equity powers of the court may permit reopening or vacating of divorce decrees after 30 days for parties similarly situated to appellant and appellee herein. Courts in other states have held that, where a procedural mechanism or equity jurisdiction exists to effectuate opening the property settlement, the relief of reopening the decree may be granted. As the Court in *In re Flannagan* stated:

Most courts in other jurisdictions that have considered the retroactive application of the USFSPA to final decrees have allowed reopening, when a procedural mechanism existed for such reopening. *Edsall v. Superior Court,* [143 Ariz. 240], 693 P.2d 895 (Ariz.1984); *Smith v. Smith,* 458 A.2d 711 (Del.Fam.Ct.1983); *Castiglioni v. Castiglioni,* [192 N.J.Super. 594], 471 A.2d 809 (N.J.Super.Ct.1984);

■ Neither do we find cause to rearticulate appellee's plea as a motion to vacate pursuant to Section 602. Although the record clearly demonstrates that appellant did not disclose to the lower court his military pension asset, we cannot say this failure to disclose amounted to extrinsic fraud. *See Fenstermaker v. Fenstermaker*, 348 Pa.Super. 237, 502 A.2d 185 (1985).

Rather, we find the Divorce Code supplies an adequate legal remedy for any party's failure to disclose:

§ 403. Injunction against disposition of property pending suit and decree rendering fraudulent transfers null and void

. . . . .

(b) Both parties shall submit to the court an inventory and appraisement of *all property* owned or possessed at the time action was commenced.

(c) If any party *deliberately or negligently fails to disclose information* required by subsection (b) and in consequence thereof any asset or assets with a fair market value of $500 or more is omitted from the final distribution of property, the party aggrieved by such

*Koppenhaver v. Koppenhaver*, [101 N.M. 105], 678 P.2d 1180 (N.M. Ct.App.1984); *Thorpe v. Thorpe*, [123 Wis.2d 424], 367 N.W.2d 233 (Wis.Ct.App.1985). *Edsall, Smith,* and *Koppenhaver* discussed the finality doctrine and concluded that the balance of equities favored reopening over finality.

Two courts have refused to reopen decrees because of the doctrine of finality. *In re Quintard*, 691 S.W.2d 950 (Mo.Ct.App.1985); *Allison v. Allison*, 690 S.W.2d 340 (Tex.Ct.App.1985). However, in each case the court noted that finality was considered such an important doctrine in the state that no CR 60(b)(11)-type rules had been created. Other courts have refused to open specific final decrees because of an insufficient showing of inequity. *In re Habermehl*, [135 Ill.App.3d 105, 89 Ill.Dec. 939], 481 N.E.2d 782 (Ill.Ct.App. 1985); *Harkins v. Harkins*, [101 N.M. 296], 681 P.2d 722 (N.M.1984). No cases have been found in which the doctrine of finality prevailed over the inequity of denying retroactivity, so long as a procedural mechanism such as CR 60(b)(11) existed for retroactive application. The weight of authority from other states leads to a conclusion favoring retroactivity over finality in applying the USFSPA.

42 Wash.App. 214, 709 P.2d 1247, 1251 (1985). Because an adequate statutory remedy exists in this matter, we reserve decision as to whether equitable remedies will apply to parties seeking retroactive relief, and the reopening of their divorce decrees.

nondisclosure *may at any time petition the court granting the annulment or divorce to declare the creation of a constructive trust* as to all undisclosed assets, for the benefit of the parties and their minor or dependent children, if any, with the party in whose name the assets are held declared the constructive trustee, said trust to include such terms and conditions as the court may determine. The court shall grant the petition upon a finding of a failure to disclose such assets as required under subsection (b)....

23 P.S. § 403(b), (c). *See also* 23 P.S. § 401(d)(6), *supra.*

■ Appellant either deliberately or negligently failed to disclose information about his military pension, an asset whose value clearly exceeds $500.00. The failure to disclose is clear from a painstaking examination of the record, and was noted by the Master in his report reviewing the parties' assets pursuant to Section 401(d): "[t]he record is scarce concerning the party's [sic] medical, retirement, insurance or other benefits." Master's Report at 12. The appropriate remedy, therefore, is the imposition of a constructive trust upon the military pension assets. This remedy cannot be waived by a failure to file exceptions; it becomes available "at any time" a court of competent jurisdiction is presented with facts warranting its imposition.

The trial court has decided every factual issue necessary to the disposition of this matter, and correctly determined that the pension asset should be distributed as marital property. Pursuant to our power to modify an order, 42 Pa.C.S.A. § 706; *Fenstermaker, supra,* we therefore modify the lower court order dated October 7, 1985 as follows:

It is hereby ORDERED, ADJUDGED and DECREED that defendant's military retirement benefits shall be subject to imposition of a constructive trust, the trustee to be the defendant, Clyde D. Major, and the beneficiary to be the plaintiff, Judith A. Major. The trust corpus shall be equally divided; one-half of each monthly pay-

ment shall be distributed to the plaintiff. This order is effective October 7, 1985.

As so modified, the trial court order is affirmed.

## IV

Appellant's final contention is that the trial court committed reversible error by citing an unpublished memorandum decision in its opinion. Appellant's contention is without merit.

Memorandum decisions are not to be considered precedent and cannot be cited by parties to an action for any purpose. *See K.N. v. Cades,* 288 Pa.Super. 555, 566–567, 432 A.2d 1010, 1016 (1981); *Commonwealth v. Kelliher,* 325 Pa.Super. 228, 472 A.2d 1091 (1984). While the trial court may have been mistaken in its reliance on a memorandum opinion as precedent for its holding, we have found independent grounds for our decision to affirm the lower court. Therefore, the lower court's holding, if not its rationale, was proper. Furthermore, it was not reversible error for the lower court to cite the case, as no harm to either party resulted from the holding.

AFFIRMED, as modified.