560 A.2d 207

**Jacquelyn PARSHALL, Appellee,**

v.

**Richard J. PARSHALL, Appellant.**

Superior Court of Pennsylvania.

Argued April 24, 1989.

Filed June 9, 1989.

Thomas S. Talarico, Erie, for appellant.

Donald W. Grieshober, Erie, for appellee.

Before MONTEMURO, JOHNSON and CERCONE, JJ.

MONTEMURO, Judge:

The appellant, Richard J. Parshall, appeals from a judgment of the Court of Common Pleas of Erie County, entered August 18, 1988. The trial court determined that the

appellee, Jacquelyn Parshall, is entitled to a 38% share of appellant's Military Pension. The appellee is appellant's former wife. The trial court's Order provided for the following specific terms and period of payment:

> ... Defendant, Richard J. Parshall, shall pay Plaintiff, Jacquelyn Parshall, 38% of the military pension or retirement pay received by said defendant from June 25, 1981 through May 19, 1988, which amounts to $29,249.67. An initial payment of $2,500.00 is required immediately. The remaining $26,749.67 may be tendered in full or in installments, as set forth in the following. Installments may be made at a monthly rate of deducting said amount from the monthly amount received from the military pension or retirement pay received by defendant.
>
> ... Additionally, the defendant shall have the requirement to pay 38% of said military pension or retirement pay from May 19, 1988 for the future, so long as defendant receives such military pension or retirement pay.

R.R. at 2a. We affirm.

The facts which underlie the present appeal are essentially undisputed. The appellant and the appellee were married on November 30, 1950. In April of 1951, the appellant commenced active military service with the Navy. The appellant continued in his military service throughout the marriage of the parties, retiring on January 31, 1971. The parties thereafter separated in September of 1971. In anticipation of their divorce, which was ultimately granted in December of 1976, the parties executed a Marital Property Settlement Agreement (the "Agreement"). The Agreement, dated September 21, 1976, expressly indicates that the parties intended "to settle and determine for all times to come their respective property rights and obligations arising out of the marriage relationship...." R.R. at 10a. Although specifically providing that the appellant would pay a monthly sum of $250.00 to the appellee for a thirty month period and appellee's counsel fees, the Agreement was in essence a release agreement:

3. Except as hereinafter provided, the parties hereto mutually release or relinquish unto each other any and all right which they may have acquired by virtue of the marriage relationship in and to the real and/or personal property of the other, including but not limited to, the right to courtesy or dower, the right to be supported by the other, the right to counsel fees, and/or alimony in any divorce action now pending or ever to be instituted by either of the parties, the right to inherit from the estate of the other, whether by way of descent and distribution or by way of election against the will of the other, the right to widow's exemption or family allowance, and every other property right which may have accrued to either party by virtue of his or her being married to the other; *excepting any benefits which may accrue as a result of the Husband being in the military during marriage.*

R.R. at 11a. The language highlighted above was added in handwriting to the typed Agreement at the request of the appellee, and initialled by both the appellant and the appellee.

At the time the parties executed their counselled Marital Property Settlement Agreement, the concepts of "marital property" and "equitable distribution" were not a part of the law of this jurisdiction. Prior to the effective date of the 1980 Divorce Code, July 1, 1980, "the statutory and common law of the Commonwealth governed the status of the spouses' assets upon divorce. Hence, propertied spouses seeking to protect assets against loss upon divorce relied upon the expectation that property would remain as it had been legally titled." *Bacchetta v. Bacchetta,* 498 Pa. 227, 240, 445 A.2d 1194, 1201 (1982) (Flaherty, J., dissenting). Indeed, the attorney who had represented the appellee during the negotiation of the Agreement testified as follows during a August 21, 1986, hearing:

Q. Did you tell [appellee] that she had no property rights as such to Mr. Parshall's retirement benefits?

A. I don't know if in 1975 I would have said that. I have to answer, probably not. Probably not, because I didn't consider—I don't think most family lawyers would have considered a pension ... as anything but income in 1975 and treat it and dealt with it in that fashion. We didn't think of pensions in terms of property rights for distribution purposes. At least I didn't in 1975 and '76.

R.R. at 91a.[1] Later, in 1981, the United States Supreme Court held that military pensions were ineligible for inclusion in marital property division because of federal preemption. *See McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). However, with the passage of the Uniformed Services Former Spouses' Protection Act (USFSPA), Department of Defense Authorization Act, 1983, Pub.L. 97–252, § 1006(a), 96 Stat. 737 (1982), effective February 1, 1983, 10 U.S.C. § 1408 note (1982), the law in this area has been set in a different direction. The USFSPA grants authority to the states to determine whether military pensions are to be treated as property of the service member, or marital property of the service member and spouse. *See* 10 U.S.C. § 1408(c)(1).[2] The USFSPA is retroactive to June 25, 1981. *Id.*

In *Major v. Major,* 359 Pa.Super. 344, 518 A.2d 1267 (1986), *aff'd,* 518 Pa. 62, 540 A.2d 529 (1988), this Court held that the clear language of the Pennsylvania Divorce Code

---

**1.** The issue of whether other types of pensions are marital property was not decided in Pennsylvania until well after the date of the execution of the Marital Property Settlement Agreement at issue in the case at bar. *See Flynn v. Flynn,* 341 Pa.Super. 76, 491 A.2d 156 (1985); *Braderman v. Braderman,* 339 Pa.Super. 185, 488 A.2d 613 (1985); *King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984).

**2.** The USFSPA also provides the following:

... A court may not treat the disposal retired or retainer pay of a member in the manner described in paragraph (1) unless the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court. 10 U.S.C. § 1408(c)(4).

includes a military retirement pension as marital property to the extent that it is acquired during the marriage. *See* 23 P.S. § 401 *et seq.* In so holding, this Court opined:

... In light of the sacrifices of those families in the armed services, including long periods of separation while on duty or on assignments overseas, the contributions of both spouses to the household enable the enlisted spouse to continue serving until the pension vests after 20 years of service. Thus we reject appellant's argument that military pension benefits are not marital property.

*Id.*, 359 Pa.Superior Ct. at 350, 518 A.2d at 1270. In *Major*, we also considered the impact of Section 401(j) of the Pennsylvania Divorce Code, which provides that all property rights not vested as of the date of the divorce are terminated. There, the complaint in divorce had been filed on December 8, 1981, and the divorce had been granted on December 2, 1982, *prior* to the effective date of the USFS-PA. Thus, Clyde D, Major, retired Air Force flight engineer, contended that his former wife had no right to claim any of his military pension benefits as marital property at the time of their divorce and that, thereafter, all property rights not vested were terminated. We held that Judith A. Major's interest in the military pension did *not* terminate with the divorce decree:

Essentially, appellant [Clyde D. Major] is requesting that we give *McCarty* the status of effective law, when the clear Congressional intent is to eradicate the effects, if any, of that decision. The Senate Report accompanying the Act unequivocally expresses the legislative intent to render *McCarty* a nullity:

The provisions of S. 1814 reversing the effect of the *McCarty* decision are retroactive to June 26, 1981, the date on which the U.S. Supreme Court issued that decision. *That is, the committee intends the legislation to restore the law to what it was when the courts were permitted to apply State divorce laws to military retired pay.* Former spouses divorced in the

interim period between the McCarty decision and the effective date of this law will have the *opportunity to return to court to have their decrees modified in light of this legislation.* However, nothing in the bill would mandate payment out of retired pay which had been disbursed during the period between the date of the *McCarty* decision and the effective date of this legislation.

S.Rep. 502, 97 Cong., 2d Sess. 5–6, reprinted in 1982 U.S.Code Cong. & Ad.News 1555, 1596, 1599–1600. (Emphasis added). Although prior to the *McCarty* decision, Pennsylvania courts had not been presented with the issue of the status military pensions, economic justice is clearly furthered by including the pension in the marital property. We believe that, had the issue been raised previously, our courts would have decided as we decide today.... Therefore, we hold that appellee did not lose her right to claim any portion of the interest she held in the military pension merely because *McCarty* was the law at the time the divorce was entered: the USFSPA, rather than *McCarty,* applies to all divorce decrees filed after *McCarty,* from June 25, 1981 to the present.

*Major, supra,* 359 Pa.Superior Ct. at 351–352, 518 A.2d at 1271–1272.

The trial court in the instant case correctly determined that the appellee cannot establish an interest in appellant's military pension based upon the provisions of the USFSPA or the Pennsylvania Divorce Code of 1980. As the above discussion of the USFSPA and the *Major* decision makes clear, the USFSPA applies only to divorce decrees entered after June 25, 1981. The Divorce Code of 1980, 23 P.S. § 101 *et seq.,* became effective in 1980 and therefore has no practical effect on a divorce decree entered in 1976. *See* 23 P.S. § 801. The trial court, however, did grant appellee an equitable remedy: specific performance of the 1976 Marital Property Settlement Agreement. It is well established that the contractual remedy of specific performance may be

invoked to enforce the provisions of a marital property settlement agreement, executed in anticipation of a divorce. *See Brown v. Hall,* 495 Pa. 635, 435 A.2d 859 (1981); *Balter v. Balter,* 284 Pa.Super. 350, 425 A.2d 1138 (1981); *Sarsfield v. Sarsfield,* 251 Pa.Super. 516, 380 A.2d 899 (1977); *Olivieri v. Olivieri,* 242 Pa.Super. 457, 364 A.2d 361 (1976). Consequently, the only issue is whether the trial court erred in interpreting the terms of the 1976 Agreement executed by the parties in the case at bar.

 Initially, it is the role of the trial court to determine, as a matter of law, whether written contract terms are clear or ambiguous. In construing the terms of a property settlement between husband and wife, as with any type of contract, the intention of the parties is paramount. *See Conrady v. Conrady,* 379 Pa.Super. 426, 550 A.2d 231 (1988). "A contract is not ambiguous if the court can determine its meaning with a knowledge of the facts on which its meaning depends. The fact that the parties do not agree upon the proper interpretation does not necessarily render the contract ambiguous." *Vogel v. Berkley,* 354 Pa.Super. 291, 297, 511 A.2d 878, 881 (1986) (citation omitted). In the present case, after a hearing which outlined the circumstances of the execution of the 1976 Agreement, the trial court determined that the language of the Agreement is not ambiguous where it states "excepting any benefits which may accrue as a result of the Husband being in the military during the marriage." The trial court states the following in its Opinion of May 19, 1988:

Plaintiff's final claim concerns the language contained within the property settlement agreement which apparently preserves plaintiff's right to an interest in the military pension. It is clear *from the agreement* that this term was specifically bargained for and that there was a meeting of the minds as to its inclusion into this agreement.... Having determined the contract and the aforementioned contract term to be valid, this court finds

that plaintiff is entitled to some form of relief as a matter of contract law.

Op. of Trial Court, May 19, 1988, at 4 (emphasis added). The trial court concluded that appellee's interest in appellant's military pension accrued on the retroactive date of the USFSPA: June 25, 1981.

We agree that the language of the 1976 Agreement, wherein the appellee specifically preserved any benefits which may accrue to her because of her role as a military wife for twenty years, is not ambiguous. The trial court's interpretation of this term as including appellee's interest in her former husband's military pension, which became available to her for the first time in 1981, is a reasonable one.[3] In her role as a military wife, appellee was required to sacrifice a portion of the family income when that income was placed into her husband's military pension. There can be no doubt that both the appellant and the appellee coped with a reduction in disposable income during most of their married years in order to create the military pension fund for their mutual benefit, enjoyment, and security in the future. The normal reading of the words of the 1976 Marital Property Settlement Agreement, in light of the circumstances of a twenty-six year marriage wherein one spouse was an active member of the military for twenty of those twenty-six years, amply supports the trial court's construction of the Agreement.

Finding no error of law on the part of the trial court, we affirm.

Order affirmed.

**3.** In view of the fact that the appellee's interest in appellant's military pension did not become available to her until after June 25, 1981, appellee's action seeking specific performance, instituted in December of 1983, was timely. Appellant's contentions to the contrary are meritless.