**Salvatore LAPIO and Maria Lapio, Trustees of the Sunshine Homebuilders Inc. Profit Sharing Plan and Trust, Appellees**

v.

**Ronald E. ROBBINS, Jr. and Marian A. Robbins, Appellants.**

Superior Court of Pennsylvania.

Argued Feb. 9, 1999.
Filed May 5, 1999.

N. Curtis Ward, King of Prussia, for appellants.

Mark F. Himsworth, Lansdale, for appellees.

Before STEVENS, LALLY–GREEN and OLSZEWSKI, JJ.

STEVENS, J.:

¶ 1 This is an appeal from the order entered in the Court of Common Pleas of

Montgomery County granting summary judgment in favor of Appellees Salvatore and Maria Lapio, Trustees of the Sunshine Homebuilders, Inc., Profit Sharing Plan and Trust (Homebuilders), and against Appellants Ronald and Marian Robbins, in the amount of one hundred and fifty thousand dollars ($150,000.00), plus interest. The lower court's order was based on its conclusion that the Lapios loaned the Robbins $150,000.00, that the Robbins defaulted on the loan, and that the Robbins were personally liable for the loan. We affirm in part and reverse in part.

¶ 2 Our scope of review is plenary when reviewing the propriety of a lower court's entry of summary judgment. *Payton v. Pennsylvania Sling Company,* 710 A.2d 1221 (Pa.Super.1998). We must review the record in the light most favorable to the adverse party and determine whether the moving party has established that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* "[I]n summary judgment proceedings, it is not th[is] court's function to determine the facts, but only to determine if an issue of material fact exists." *American States Insurance Co. v. Maryland Casualty Co.,* 427 Pa.Super. 170, 628 A.2d 880, 885 (1993) (citation omitted). Since an order favorable to the moving party will prematurely end an action, summary judgment is appropriate in only the clearest of cases. *Id.*

¶ 3 The facts in this case are undisputed and are as follows: Mr. Robbins was the sole shareholder and president of Nationwide Equipment, Inc. (Nationwide). Needing money to continue operating Nationwide, Mr. Robbins approached Mr. La-

pio and discussed the possibility of a loan. Although Mr. Robbins met with Mr. Lapio on several occasions, he never mentioned that he intended to use the money for Nationwide's operation or indicated that Nationwide was experiencing financial difficulties. On December 27, 1995, Mr. Lapio, as trustee for Homebuilders, signed a check for $150,000.00 made "payable to the order of Ron and Marian Robbins."[1] After receiving the check, Mr. Robbins endorsed it with both his and his wife's name. Nationwide's name did not appear on the "pay to the order of" line or on the endorsement. Mr. Robbins then deposited the $150,000.00 in his and Mrs. Robbins' joint personal checking account.[2]

¶ 4 Neither Mr. Robbins nor Mrs. Robbins made any payments towards the loan, and, therefore, on May 22, 1997, the Lapios filed a complaint seeking $150,-000.00, plus interest.[3] Subsequently, the Lapios filed a motion for summary judgment, which was granted by the lower court on July 29, 1998. The lower court concluded that there was no genuine issue of material fact and that, under the Uniform Commercial Code (UCC),[4] the Lapios were entitled to judgment as a matter of law.[5] As a result, the lower court entered judgment for $150,000.00 in favor of the Lapios, and this timely appeal followed.

¶ 5 In this case, there is no dispute that Mr. Lapio, as a trustee for Homebuilders, gave Mr. Robbins a check for $150,000.00, which was made payable to Mr. Robbins and his wife, or that the Robbins made no payment on the loan. However, the Robbins argue that there is a genuine issue of material fact as to

---

1. The parties stipulate that the loan was to be repaid within one year and that the interest rate would be eight percent.

2. Mr. Robbins avers that he deposited the money in the joint personal checking account because Nationwide's checking account was frozen by the company's landlord.

3. We note that in their complaint the Lapios never alleged that the Robbins fraudulently secured the loan at issue.

4. 13 Pa.C.S.A. § 3101 *et seq.*

5. Specifically, the lower court concluded that because Mr. Robbins did not endorse the check at issue with any reservation indicating that the check was for Nationwide, 13 Pa. C.S.A. § 3402 precluded the Robbins from introducing parole evidence of the parties' intent to loan the money to Nationwide and not to the Robbins in a personal capacity.

whether the check was evidence of a personal loan or a loan made to Nationwide, and, therefore, it cannot be said as a matter of law that Mr. Robbins is personally liable on the loan. Moreover, the Robbins argue that there is no genuine issue of material fact regarding Mrs. Robbins' lack of knowledge/agreement to the loan, and, therefore, that she is entitled to judgment as a matter of law. To support their arguments, the Robbins contend that the UCC's rules are inapplicable to this case since the check at issue is not a negotiable instrument. As such, the Robbins aver that the lower court erred in concluding that the absence of a reservation on the check precluded the finding that the Robbins were not personally liable, and that the lower court erred in failing to analyze this issue under the rules for oral contracts. Moreover, the Robbins aver that the rules of agency do not preclude the conclusion that Mrs. Robbins is not personally liable.

¶ 6 With regard to the Robbins' first issue, whether the lower court erred in concluding that Mr. Robbins was personally liable, we find that, assuming, *arguendo*, that the UCC does not apply in this case, the trial court's granting of summary judgment must still be affirmed.

██ ¶ 7 Here, the parties' loan agreement is an oral one.

> A verbal agreement differs from a written one in that when construing a written contract all negotiations leading up to the contract are presumed to be merged in the writing; moreover, oral testimony is not admissible to explain the written document in the absence of an ambiguity requiring such an explanation. However, when construing an oral contract the words constituting the agreement are merely parts of and imbedded in a general conversation, and the meaning must be interpreted with reference to the circumstances under

which the parties contracted in light of the objectives to be accomplished. In cases involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to surrounding circumstances and course of dealings between the parties in order to ascertain their intent.

*Boyle v. Steiman*, 429 Pa.Super. 1, 631 A.2d 1025, 1033 (1993) (citations omitted). In addition, we note that unambiguous terms of a contract are construed by a court as a matter of law. *Parshall v. Parshall*, 385 Pa.Super. 142, 560 A.2d 207 (1989).

¶ 8 In this case, Mr. Lapio testified that he met with Mr. Robbins on numerous occasions to discuss the possibility of a loan and that, during these meetings, Mr. Robbins indicated that he needed a loan "for him and Mary." Salvatore Lapio's Deposition dated 11/12/97 at 5. Mr. Robbins provided no other reason for desiring a loan. Mr. Lapio specifically testified that Mr. Robbins never indicated that he needed the money to continue operating Nationwide, that Mr. Robbins never provided Mr. Lapio with any information concerning Nationwide's finances, and that Mr. Lapio was not even aware whether Nationwide was still in business when the loan was made. *Id.* at 7, 15. In fact, Mr. Lapio indicated that the parties had no discussion regarding Nationwide and that the name "Nationwide" was never mentioned during the meetings. *Id.* at 7.

¶ 9 Moreover, Mr. Lapio testified that, during the parties' final meeting, prior to giving Mr. Robbins a check for $150,000.00, he told Mr. Robbins that he needed security for the loan. Mr. Robbins agreed to guarantee the loan with a piece of property, which was jointly and personally owned by Mr. and Mrs. Robbins.[6] *Id.* at 8–9. Mr. Lapio then requested his secre-

---

**6.** The record reveals that a document purporting to give Mr. Lapio a security interest in the Robbins' property was created and that the document was given to Mr. Robbins so

that both he and Mrs. Robbins could sign the document. The Robbins never signed the document.

tary to enter the room and told her to "write a check to Marian and Ron Robbins, personal." *Id.* at 25. Mr. Robbins was present when the instructions were given to the secretary, he did not object, and he took the check as written when it was handed to him.

¶ 10 During his deposition, Mr. Robbins admitted that Mr. Lapio testified accurately regarding the discussions occurring prior to the loan and that he never discussed Nationwide with Mr. Lapio. Ronald Robbins' Deposition dated 11/12/97 at 11, 20. When asked whether he discussed his personal liability with Mr. Lapio, Mr. Robbins answered, "No, because I was asking for [the loan]." *Id.* at 22. In addition, Mr. Robbins admitted that he was aware that the check was made payable to "Ron and Marian Robbins" before it was deposited, that he deposited the check without a restriction relating to liability, and that he never discussed the matter with Mr. Lapio. *Id.* at 27. Mr. Robbins also admitted that the funds were deposited in his and Mrs. Robbins' personal account, although he testified that he attempted to deposit the funds in Nationwide's account but was told that if the money was deposited it would not be usable immediately since the account was frozen. *Id.* at 20. Regarding the use of the funds, Mr. Robbins indicated that the funds were used exclusively by Nationwide. *Id.* at 20. However, Mr. Robbins also indicated that, from the money received from Mr. Lapio, Mr. Robbins "loaned" Nationwide one hundred and thirty-five thousand dollars, but that repayment on the loan to Nationwide had not been made. *Id.* at 10.

¶ 11 Based on the aforementioned, we conclude that the parties' language and conduct surrounding the loan can lead to only one of two possible conclusions. The first possible conclusion is that Mr. Robbins and Mr. Lapio mutually assented at the time the loan was made that the Robbins would be personally liable on the loan, and Mr. Robbins averred lack of personal liability after repayment was requested. The second possible conclusion is that Mr. Robbins intended that Nationwide would be liable on the loan, but he was aware that his language and conduct led Mr. Lapio to believe that the Robbins would be personally liable on the loan, and Mr. Robbins did nothing to correct this mistaken belief. In either case, we find that there is no genuine issue of material fact regarding liability and that, as a matter of law, Mr. Robbins is personally liable on the loan.[7]

¶ 12 With regard to the first possibility, it is well settled that where parties mutually assent to a term at the time of contracting, the term will generally be enforced. *Degenhardt v. Dillon Company*, 543 Pa. 146, 669 A.2d 946 (1996). From the evidence, it can reasonably be inferred that Mr. Robbins and Mr. Lapio mutually agreed at the time of contracting that the Robbins would be personally liable on the loan and that Mr. Robbins raised the claim of non-liability after repayment was demanded. The fact that Mr. Robbins later changed his mind about a material term does not require a finding of non-enforceability.

¶ 13 As for the second possibility, case law reveals that, irrespective of actual fraud, if a party to a contract knows or has reason to know of a unilateral mistake by the other party, and mistake, as well as the actual intent of the parties is clearly shown, relief will be granted to the same extent as if a mutual mistake existed.

---

7. The Robbins argue that because the money was used by Nationwide there is a genuine issue of material fact as to personal liability. We find that this fact alone does not create a genuine issue of material fact regarding Mr. Robbins' liability. In his deposition, Mr. Robbins clearly indicated that he "loaned" Nationwide $135,000.00 from the $150,000.00 and that Nationwide had not repaid on the loan. Ronald Robbins' deposition dated 11/12/97 at 10. From this testimony, it is clear that, although the money was used primarily by Nationwide, the loan from the Lapios was a personal loan made to Mr. Robbins, who then loaned the money to Nationwide.

*Lanci v. Metropolitan Insurance Co.*, 388 Pa.Super. 1, 564 A.2d 972 (1989). In such a situation, the mistaken party may void the contract if the mistake is regarding a material term or the mistaken party may enforce the contract so that the other party for whose benefit the contract was performed will not be unjustly enriched. *Id.*; Restatement (Second) of Contracts § 153.

¶ 14 Here, it is clear that if Mr. Robbins was not mutually assenting to personal liability when the loan check was given to him, he knew or had reason to know that Mr. Lapio believed that the Robbins would be personally liable and he did nothing to dispel Mr. Lapio's belief. As such, we find that the Lapios are permitted to enforce the oral agreement as if the parties mutually agreed to personal liability since the Robbins' would be unjustly enriched if the Lapios were not permitted to do so.[8] *Id.*

¶ 15 Having determined that the Lapios are entitled to enforce the oral agreement as a matter of law and that Mr. Robbins is personally liable for the loan, we must next determine whether Mrs. Robbins is personally liable. There is no dispute that Mrs. Robbins was unaware of the loan prior to the distribution of the loan proceeds and that she did not endorse the loan check. In fact, there is no indication that she personally discussed the loan with the Lapios or that she verbally agreed with the loan's terms. At issue is whether Mrs. Robbins can be held liable for the loan under the rules of agency, whether her subsequent actions ratified the unauthorized actions taken by Mr. Robbins, or whether she is liable for the loan pursuant to Section 3402 of the UCC.[9]

¶ 16 "The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the under-

taking." *Bradney v. Sakelson*, 325 Pa.Super. 519, 473 A.2d 189, 191 (1984) (citations omitted). With regard to the relationship of husband and wife, this Court has held that:

> '[n]either husband nor wife by virtue of the relation has power to act as agent for the other. The relation is of such a nature, however, that circumstances which in the case of strangers would not indicate the creation of authority or apparent authority may indicate it in the case of husband or wife. Thus, a husband habitually permitted by his wife to attend to some of her business matters may be found to have authority to transact all of her business affairs.'

*Tonuci v. Beegal*, 188 Pa.Super. 66, 145 A.2d 885, 888 (1958) (citing Restatement, Agency 2d § 22(b)). *See Shiner v. Moriarty*, 706 A.2d 1228 (Pa.Super.1998). That is, the existence of an agency does not arise from the marital relationship itself; however, it may be implied from the attending circumstances and does not require evidence of an explicit, specific authorization. *Sidle v. Kaufman*, 345 Pa. 549, 29 A.2d 77 (1942).

¶ 17 Here, the undisputed evidence reveals that Mr. Robbins was not acting as Mrs. Robbins' agent when he verbally agreed to the loan or endorsed Mrs. Robbins' name on the loan check. As previously discussed, Mrs. Robbins did not explicitly authorize the loan agreement in this case and she had no knowledge of the loan. Furthermore, the surrounding circumstances indicate that no agency relationship existed. There is no evidence that Mr. Robbins was ever permitted, implicitly or explicitly, to attend to any of Mrs. Robbins' business affairs or that he had the authority to transact her business affairs. During her deposition testimony, Mrs. Robbins expressly stated that she had never given Mr. Robbins permission to

---

**8.** It is clear that Nationwide is bankrupt and that the Lapios cannot recover from it as a corporate entity.

**9.** In its opinion, the lower court failed to indicate its reasons for concluding that Mrs. Robbins was personally liable.

endorse her name on checks and that, to the best of her knowledge, he had never done so in the past. Marian Robbins' Deposition dated 11/12/97 at 12. In addition, Mr. Robbins testified that he had never endorsed his wife's name on a check prior to this incident. Ronald Robbins' Deposition dated 11/12/97 at 7. Moreover, Mrs. Robbins testified that she was not involved in Nationwide's business in any capacity and that she had not been a part of its transactions in the past. Marian Robbins' Deposition dated 11/12/97 at 22. As such, there is no evidence that Mr. Robbins was "attending to Mrs. Robbins' business affairs" when he secured a loan, presumably for Nationwide's use. Simply put, although the relationship in this case is that of husband and wife, there is no evidence of agency.[10]

■ ¶ 18 However, although there is no evidence of agency, we conclude that there is a genuine issue of material fact as to whether Mrs. Robbins can be held personally liable under the theory of ratification. Pursuant to the Restatement (Second) of Agency § 94, "[r]atification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." The Restatement further provides that "[a]n affirmance of an unauthorized transaction can be inferred from a failure to repudiate it." The Restatement (Second) of Agency § 94.

¶ 19 During her deposition, Mrs. Robbins admitted that she knew that her husband had deposited $150,000.00 into the parties' joint checking account and that the money was to be used to aid Nationwide's

business affairs. However, she denied knowing the source of the money or the fact that her name was on the loan check. Mrs. Robbins also admitted that, during the spring of 1996, her sister-in-law informed her that Mr. Lapio loaned Mr. Robbins $150,000.00; however, her sister-in-law did not inform her that Mrs. Robbins' name was on the loan check or that she was involved with the loan in any manner.[11] Mrs. Robbins then testified that during the spring of 1997 Mr. Lapio approached her and Mr. Robbins at their home and wanted the couple to agree to sign a document giving the Lapios a security interest in the Robbins' personal property. Mrs. Robbins testified that she would not agree to such a request since she believed that she was not a party to the loan and did not wish to have her personal property subject to the loan.

¶ 20 Mr. Lapio also testified regarding his communication with Mrs. Robbins during the spring of 1997. Specifically, he testified that when he went to see the Robbins at their home Mrs. Robbins indicated she knew about the loan and that she agreed to sign a document giving the Lapios a security interest in a piece of property which was owned jointly by the Robbins.

¶ 21 Based on the aforementioned testimony, we find that there is a genuine issue of material fact as to whether Mrs. Robbins ratified the unauthorized loan agreement. If Mrs. Robbins learned of the loan agreement, took no action to inform the Lapios that her husband was not authorized to make an agreement on her behalf, and reaped the benefits from Nationwide's use of the loan proceeds, then her failure

10. We note that there is a presumption that, with respect to properties held by the entireties, either spouse has the power to act for both, without specific authority, so long as the benefits of such action inure to both. *News Printing Company v. Roundy*, 409 Pa.Super. 64, 597 A.2d 662 (1991). However, the presumption does not apply in this case since Mr. Robbins was the sole shareholder/officer of Nationwide and Mrs. Robbins was not involved in the business in any manner. Sim-

ply put, there is no evidence that Nationwide was a joint enterprise of Mr. and Mrs. Robbins. *See Croft v. Malli*, 378 Pa. 6, 105 A.2d 372 (1954) (holding that where a strip mine operation was the joint enterprise of the husband and wife, both were liable for damage sustained to plaintiff's bulldozer).

11. Mrs. Robbins' sister-in-law maintained Nationwide's checking account. Ronald Robbins' Deposition dated 11/12/97 at 19.

to repudiate the agreement may result in her personal liability. However, if Mrs. Robbins did not learn of the loan agreement and indicated such to Mr. Lapio by refusing to give him a security interest in her personal property, then she may not be held personally liable under the theory of ratification. As such, we find it necessary to reverse the trial court's grant of summary judgment as to this issue and remand for further proceedings.[12]

¶ 22 For all of the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of the Lapios' as to the issue of Mr. Robbins' personal liability; however, we reverse and remand for further proceedings regarding Mrs. Robbins' personal liability.

¶ 23 Affirmed in part; Reversed and Remanded for proceedings consistent with this decision in part; Jurisdiction relinquished.

---

12. We note that Appellees argue that Mrs. Robbins is personally liable under Subsection 3402(c) of the UCC, which states that:

If a representative signs the name of the representative as a drawer of the check without indication of the representative status and the check is payable from an account of the represented person who is identified on the check, the signer is not liable on the check if the signature is an authorized signature of the represented person.

Here, assuming, *arguendo*, that the check is a negotiable instrument subject to the UCC, we find that Subsection 3402(c) is inapplicable. Subsection 3402(c) addresses the liability of a representative who signs a check on behalf of a *drawer*, the person who issues the check. In this case, Mr. Lapio was the drawer of the check, not the Robbins. As such, Subsection 34023(c) does not act to create personal liability as to Mrs. Robbins.