## Cohen v. McLafferty

*Lawrence M. Stein,* for plaintiffs.
*Michael Fishbein,* for defendant.

HERRON, *J.,* June 15, 2001—Plaintiffs Craig A. Cohen and Lawrence M. Stein have filed a motion for summary judgment and a motion for sanctions. For the reasons set forth in this opinion, the court has granted the motion for summary judgment and denied the motion for sanctions.

## BACKGROUND[1]

The court has set forth the background in this matter twice previously in *Cohen v. McLafferty,* July 2000, no. 923 (C.P. Phila. Sept. 29, 2000) (Herron, J.), and *McLafferty v. Cohen,* September 2000, no. 3321 (C.P. Phila. May 10, 2001) (Herron, J.).[2] For the sake of brev-

---

1. Making specific citations to the motion and McLafferty's answer thereto for background purposes is complicated by McLafferty's ongoing aversion to filing answers to the plaintiffs' motions.

2. Opinion available at http://courts.phila.gov/cpcvtcomp.htm.

ity, we will now set forth only those facts relevant to the motions.

From May 1, 1993 until April 1, 1997, plaintiffs and defendant David P. McLafferty practiced law together as partners in the firm of McLafferty, Cohen & Stein. Complaint at ¶3; answer at ¶3. The terms of the partnership were set forth in a general partnership agreement dated May 1, 1993 and signed by the three parties. Motion for summary judgment at ¶¶2-3; defendant's response at 1.

After the partnership's dissolution in April 1997, the parties became embroiled in a dispute over the distribution of post-dissolution contingency fees. The first provision in the agreement that addresses this topic is paragraph 8.02(g)(iii):

"[F]ifty percent of the remaining balance [after the deduction of certain costs and expenses] shall be paid to the partnership to be distributed as partnership property by the liquidator as provided in paragraph 8.02(b) hereof and 50 percent of the remaining balance shall be paid directly to the handling attorney." Plaintiffs' summary judgment memorandum, exhibit A at ¶8.02(g)(iii).

Under paragraph 8.02(b), in turn, funds remaining after the repayment of creditors, loans and capital contributions were to be divided "in accordance with the partnership shares as set forth in paragraph 3.01 (a)." *Id.* at ¶8.02(b).

While agreeing that the handling attorney in question was entitled to an immediate 50 percent, the parties disputed the manner of allocation prescribed by paragraph 3.01(a), which reads as follows:

"(a) With respect to the profits or losses sustained in each fiscal year, the allocation of profits and losses shall be as follows:

| | |
|---|---|
| Craig A. Cohen | 33 1/3% |
| David P. McLafferty | 33 1/3% |
| Lawrence M. Stein | 33 1/3%" |

Plaintiffs' summary judgment memorandum, exhibit A at ¶3.01(a). According to McLafferty, paragraph 3.01(a), when read in conjunction with the remainder of the agreement, dictates that the non-handling attorneys divide the second 50 percent between the two of them. Defendant's response at 4. The plaintiffs dispute this interpretation, arguing that the second 50 percent should be divided among all three attorneys like other partnership profits. Motion for summary judgment at ¶17.

The plaintiffs have filed a motion for summary judgment, asking the court to find that their interpretation of the agreement is the correct one and to issue a declaratory judgment accordingly. In addition, the plaintiffs have filed a motion for sanctions. In this second motion, the plaintiffs contend that McLafferty's preliminary objections to the plaintiffs' complaint, which the court overruled in *Cohen v. McLafferty,* July 2000, no. 923 (C.P. Phila. Sept. 29, 2000) (Herron, J.),[3] were filed in bad faith, warranting an award of attorneys' fees.

## DISCUSSION

Because the agreement unambiguously states how post-dissolution fees are to be divided, the plaintiffs are

---

3. Opinion available at http://courts.phila.gov/cpcvtcomp.htm.

entitled to summary judgment. The motion for sanctions, however, is without merit and is denied.

## I. *The Agreement Is Unambiguous and the Plaintiffs' Motion for Summary Judgment Must Be Granted*

If parties disagree as to the meaning of a contract's terms, a court should attempt to interpret the contract using standard rules of interpretation. *Banks Engineering Co. Inc. v. Polons,* 561 Pa. 638, 644 n.4, 752 A.2d 883, 886 n.4 (2000). In general, "a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy." *Insurance Co. of Evanston v. Bowers,* 758 A.2d 213, 220 (Pa. Super. 2000) (citing *Antanovich v. Allstate Ins. Co.,* 507 Pa. 68, 76, 488 A.2d 571, 575 (1985)).

Under Pennsylvania law, a contract is ambiguous "when a contract provision is reasonably susceptible to more than one meaning," *West Conshohocken Restaurant Assocs. Inc. v. Flanigan,* 737 A.2d 1245, 1248 (Pa. Super. 1999). (citation omitted) A court must not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 606, 735 A.2d 100, 106 (1999) (citing *Steuart v. McChesney,* 498 Pa. 45, 53, 444 A.2d 659, 663 (1982)). See also, *Tuthill v. Tuthill,* 763 A.2d 417, 420 (Pa. Super. 2000) ("[t]he fact that the parties have different interpretations of a contract does not render the contract ambiguous").[4] If no ambiguities are found, the court

4. Whether a contract is ambiguous is a question of law to be determined by the court. *Juniata Valley Bank v. Martin Oil Co.,* 736 A.2d

may regard the interpretation of the contract as a question of law. *Lapio v. Robbins,* 729 A.2d 1229, 1232 (Pa. Super. 1999).

An examination of the agreement itself reveals no ambiguities as to the division of post-dissolution fees. The 50 percent of net fees not paid to the handling attorney is to be distributed "in accordance with the partnership shares as set forth in paragraph 3.01(a)." Plaintiffs' summary judgment memorandum exhibit A at ¶8.02(b). Paragraph 3.01(a) states that each partner has a one-third share in the partnership. *Id.* at ¶3.01(a).[5] These provisions are not "reasonably susceptible to more than one meaning." Thus, the terms of the agreement mandate that the 50 percent of net post-dissolution fees not paid immediately to the handling attorney be distributed to all three partners in one-third shares.

McLafferty contends that the agreement includes a latent ambiguity, which is defined as an ambiguity that "arise[s] from extraneous or collateral facts that render the meaning of a contract uncertain, although the contract language appears clear and unambiguous as written." *Sunbeam Corp. v. Liberty Mutual Insurance Co.,* 740 A.2d 1179, 1185 (Pa. Super. 1999). (citation omitted)[6] According to McLafferty, the latent ambiguity in

---

650, 662 (Pa. Super. 1999) (citing *Hutchinson v. Sunbeam Coal Corp.,* 513 Pa. 192, 200-202, 519 A.2d 385, 390 (1986)).

5. McLafferty concedes that paragraph 3.01(a) directs equal distributions to all three partners. See defendant's summary judgment memorandum at 7 ("paragraph 3.01(a) provides that each partner shall have an equal 33 1/3 percent share in the profits and losses of the partnership").

6. Conversely, "[a]mbiguities may be patent, appearing on the face of a contract and arising from defective, obscure, or insensible language." *Sunbeam Corp.,* 740 A.2d at 1185. (citation omitted)

the agreement arises from the parties' goal of equal treatment for all partners, which conflicts with the unequal division of fees put forward by the plaintiffs:

"The entire partnership agreement is based on equality and unanimity. However, plaintiffs would have this court believe that the plain meaning of the general partnership agreement is unambiguous and that the handling attorney should receive approximately 67 percent of any post-dissolution contingent fees and the two remaining attorneys should each receive approximately 16.6 percent. This is a very inequitable distribution with the handling attorney receiving a disproportionately large amount of the fee. This construction is latently ambiguous and the defendant should be allowed to advance his parol evidence that the true intention of the parties was to have 50 percent go to the handling attorney and the remaining 50 percent be divided equally among the remaining two partners." Defendant's summary judgment memorandum at 6.

In support of this broad objective of partner equality, the defendant highlights six provisions of the agreement in which all partners were treated equally. *Id.* at 7.[7]

Even if McLafferty states the parties' intention of equality accurately, it does not create a latent ambiguity in the agreement. It is clear that the parties intended for the handling attorney to be accorded some special finan-

---

7. These provisions are paragraph 2.2 (limitations on loan liability); paragraph 3.01(a) (division of partnership profits and losses); paragraph 4.01 (contributions for partnership losses); paragraph 4.04(a) (unanimity of consent for decisions requiring partnership approval); paragraph 8.02 (equal division of liquidator fees); and paragraph 8.02(b) (equal division of partnership assets upon winding up).

cial consideration for managing cases. Indeed, Mc-Lafferty's own proposed distribution scheme includes its own inequality, as the handling attorney would receive 50 percent of fees while the two other partners would receive only 25 percent each. As a result, there is no ambiguity in the agreement and the court adopts the plaintiffs' interpretation of the post-dissolution fees provision as its own.

## II. *Because the Plaintiffs Cannot Show That McLafferty Filed the Objections in Bad Faith, the Motion for Sanctions Must Be Denied*

In their motion for sanctions, the plaintiffs argue that they are entitled to attorneys' fees and costs because the objections, ruled on nearly nine months ago, constituted a "bad faith abuse of process." Motion for sanctions at ¶12. Under 42 Pa.C.S. §2503(9), a litigant is entitled to counsel fees if "the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith."[8] Each of these terms has been narrowly defined as follows:

"An opponent's conduct has been deemed to be 'arbitrary' within the meaning of the statute if such conduct is based on random or convenient selection or choice rather than on reason or nature. An opponent also can be deemed to have brought suit 'vexatiously' if he filed the suit without sufficient grounds in either law or in fact

8. The aim of section 2503(9) "is to sanction those who knowingly raise, in bad faith, frivolous claims which have no reasonable possibility of success, for the purpose of harassing, obstructing or delaying the opposing party." *In re Estate of Liscio,* 432 Pa. Super. 440, 446, 638 A.2d 1019, 1022 (1994).

and if the suit served the sole purpose of causing annoyance. Finally, an opponent can be charged with filing a lawsuit in *'bad faith'* if he filed the suit for purposes of *fraud, dishonesty, or corruption.* By imposing these strict definitional guidelines, the statute serves not to punish all those who initiate legal actions which are not ultimately successful or which may seek to develop novel theories in the law. Such a rule would have an unnecessarily chilling effect on the right to bring suit for real legal harms suffered. Rather, the statute focuses attention on the conduct of the party from whom attorney's fees are sought and on the relative merits of that party's claims." *Thunberg v. Strause,* 545 Pa. 607, 615-16, 682 A.2d 295, 299-300 (1996). (citations omitted) (emphasis added)[9] See also, *Township of South Strabane v. Piecknick,* 546 Pa. 551, 559-60, 686 A.2d 1297, 1301 (1996) ("[w]e do not believe the intent of the rule permitting the recovery of counsel fees is to penalize all those who do not prevail in an action").

The plaintiffs contend that McLafferty's bad faith in filing the objections can be inferred from the flawed nature of the objections themselves. In the objections, McLafferty asserted the following:

"McLafferty was a resident of Montgomery County and had not been served by the sheriff of that county,

9. The definition of "bad faith" stated in *Thunberg* applies to all of a litigant's actions and not only the initiation of a lawsuit. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Benny Enterprises Inc.,* 669 A.2d 1018, 1022 (Pa. Commw. 1995) (citing *Springfield Township v. Gonzales,* 158 Pa. Commw. 664, 632 A.2d 1353 (1993)).

making personal service on him in Philadelphia ineffective.[10]

"The Philadelphia Court of Common Pleas did not have personal jurisdiction over McLafferty because he was not a resident of Philadelphia and no event giving rise to the plaintiffs' cause of action took place in Philadelphia.[11]

"The court did not have equitable jurisdiction in this matter because the plaintiffs had other 'equitable remedies at law' available to them."

McLafferty did not cite a single case in his supporting memorandum and relied exclusively on the bare language of four Pennsylvania Rules of Civil Procedure.

In overruling the objections in *Cohen v. McLafferty,* July 2000, no. 923 (C.P. Phila. Sept. 29, 2000) (Herron, J.),[12] the court characterized McLafferty's arguments as "baseless," "frivolous," and "preposterous." Slip op. at 4, 7. The court stands by its earlier assessment. It cannot, however, conclude that McLafferty's actions were rooted in fraud, dishonesty, or corruption, as is required to award attorneys' fees for bad faith conduct. Cf. *Miller v. Nelson,* 768 A.2d 858, 861-62 (Pa. Super. 2001) (af-

---

10. Nowhere in the objections did McLafferty dispute the plaintiffs' contention that he had been served personally in Philadelphia County in compliance with the rules governing service. In addition, McLafferty did not file a motion for reconsideration of the objections. In his response to the motion for sanctions, however, McLafferty now asserts that he was not personally served. Defendant's response to motion for sanctions at 1.

11. This argument was distinct from McLafferty's argument challenging venue.

12. Opinion available at http://courts.phila.gov/cpcvtcomp.htm.

firming award of attorneys' fees where plaintiff was advised repeatedly that his lawsuit was barred by the doctrine of immunity and that his suit had no legal basis or possible chance of success but engaged in a "relentless legal crusade" in pursuit of his claims); *In re Estate of Liscio,* 432 Pa. Super. 440, 447, 638 A.2d 1019, 1022 (1994) (affirming award of attorneys' fees for bad faith because the offending party's claim had "no reasonable possibility of success, coupled with her prolonging litigation and unnecessarily delaying distribution of the estate, as well as costing the estate thousands of dollars in attorney fees"). As a result, the plaintiffs' motion for sanctions is denied.

## CONCLUSION

The plaintiffs' motion for summary judgment is granted, while their motion for sanctions is denied.

## ORDER

And now, June 15, 2001, upon consideration of plaintiffs Craig A. Cohen and Lawrence M. Stein's motion for summary judgment and motion for sanctions, defendant David P. McLafferty's responses thereto, the respective memoranda, all other matters of record, and in accordance with the memorandum opinion being filed contemporaneously with this order, it is hereby ordered and decreed as follows:

(1) The motion for summary judgment is granted;

(2) In furtherance of the liquidation of the partnership McLafferty, Cohen & Stein, any and all contingent fees received after the termination of the partnership on April

1, 1997, shall be treated in accord with paragraphs 3.01, 8.02(b) and 8.02(g) of the partnership agreement;

(3) The post-dissolution handling attorney shall receive 50 percent of the net recovery proceeds;

(4) The remaining 50 percent of the net recovery proceeds shall be treated as partnership property and divided equally among McLafferty, Cohen and Stein pursuant to paragraphs 8.02(b)(v) and 3.01; and

(5) The motion for sanctions is denied.